**The PEOPLE of the State of Colorado, Complainant,**

v.

**David T. GOENS, Attorney–Respondent.**

**No. 88SA468.**

Supreme Court of Colorado,
En Banc.

March 13, 1989.

Linda Donnelly, Disciplinary Counsel, Susan L. Fralick, Asst. Disciplinary Counsel, Denver, for complainant.

Gary M. Jackson, Denver, for attorney-respondent.

ROVIRA, Justice.

In this attorney discipline case, a hearing panel of the Supreme Court Grievance Committee has recommended that the respondent, David T. Goens, be suspended from the practice of law for sixty days; be *required to seek reinstatement pursuant to C.R.C.P. 241.22(c) and (e);* undergo a mental health examination as a condition of reinstatement; and be assessed the costs of these proceedings. Objections to the findings of fact and recommendations of the hearing board were filed by the disciplinary counsel on the grounds that the recommended discipline is too lenient and that the respondent should be suspended for a period of time between six months and one year and one day.

By a stipulation of facts, the respondent has admitted to a continuing and serious pattern of misconduct and neglect, including the abandonment of his clients and failure to make promised restitution. Accordingly, we accept the panel's findings

and recommendations, except that part recommending a sixty-day suspension. We believe that a six-month suspension is more appropriate and accordingly suspend the respondent for six months commencing thirty days after the date of this opinion. C.R.C.P. 241.21(a).

## I.

The respondent was admitted to practice in Colorado in 1979, and is subject to the jurisdiction of this court and its Grievance Committee.

### The Baldwin Matter

On November 17, 1982, Anthony C. Baldwin was injured in an automobile accident when the car in which he was riding was struck by an RTD bus. As a result, he sustained injuries to his right knee and spine. In February 1983, Baldwin consulted the respondent about handling his case and recovering damages and medical expenses from RTD. At Baldwin's request, the respondent sent him a letter and contingency fee agreement on April 28, 1983. Baldwin executed the agreement and delivered it to respondent's office on May 12, 1983. Thereafter, respondent failed to serve the required 180-day statutory notice on RTD before the May 17, 1983 deadline, even though Baldwin had returned the signed contingent fee agreement prior to that date. For almost three years, respondent failed to advise Baldwin that he had missed the filing deadline. During this period, respondent talked with Baldwin on numerous occasions and indicated that he was pursuing the claim.

Due to his mistake, respondent offered to pay Baldwin's medical bills plus an additional sum of money. Baldwin suggested the sum of $2,000 to which respondent agreed. The medical bills were approximately $2,500. Respondent made two $500 payments by check. The second check was returned for insufficient funds and he replaced it with cash.

Thereafter, Baldwin retained new counsel who, believing the prior agreement to be inequitable, terminated it and negotiated another settlement. Respondent and Baldwin subsequently executed an agreement and promissory note, dated August 29, 1986, in which respondent agreed to pay Baldwin, in addition to his medical bills, $5,666 at 12% interest in monthly installments of $502.50, commencing September 1, 1986. Respondent completed payment on the note in April 1988, but as of September 30, 1988, medical bills in the amount of $2,395 had not been paid.

The respondent admits that his failure to file a timely notice of intent to sue RTD, his misrepresentations to his client, and his failure to carry out the terms of the settlement agreement constitute violations of C.R.C.P. 241.6; DR 1-102(A)(1) (violate a disciplinary rule); DR 1-102(A)(4) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(5) (engage in conduct that is prejudicial to the administration of justice); DR 1-102(A)(6) (engage in any other conduct that adversely reflects on his fitness to practice law); DR 6-101(A)(3) (neglect of a legal matter); DR 7-101(A)(2) (failure to carry out a contract of employment); and DR 7-101(A)(3) (prejudice or damage his client during the course of the professional relationship).

### The Collier Matter

On August 29, 1985, Nettie Collier retained respondent to handle the probate of the estate of Fannie Joe Coleman, her aunt who died on August 20, 1985. Collier paid the respondent $1,500 as attorney fees. She understood the respondent to say that he could complete the probate of the estate in three months. The estate consisted of a house and furnishings in Denver, an automobile, property in Arkansas, and a bank account, all worth approximately $70,000. Respondent advised Collier that he would promptly obtain letters of administration so that she could handle her aunt's affairs.

In early September 1985, Collier went to respondent's office and signed an application for appointment of personal representative and acceptance of appointment. Subsequently, Collier left many messages for respondent to call her as she had questions about the letters of administration and the estate in general. Respondent did not re-

turn many of Collier's calls and finally she began paying her aunt's medical bills and house expenses out of her own funds.

On October 23, 1985, respondent's secretary called Collier to inquire about information which Collier had previously provided to respondent and to ask her to come into the office again and sign papers. Collier went to respondent's office and signed the application for informal probate of will and informal appointment of personal representative. On October 24, 1985, respondent filed the application for informal probate and obtained the letters of administration. On October 28, 1985, respondent ordered publication of the notice to creditors.

At a meeting in December 1985, respondent instructed Collier to complete an inventory form and pay all of the bills of the estate by March 6, 1986. Collier inquired if she could drive her aunt's car and respondent told her she could; however, he did not advise her concerning transferring title to the vehicle. Respondent also advised Collier that the tax on the estate would be a few hundred dollars.

Collier followed the respondent's instructions and delivered the inventory and cancelled checks to his office in February 1986, expecting the estate to be closed shortly thereafter. Again, respondent did not contact Collier or return her numerous telephone calls. At a meeting on April 4, 1986, respondent had difficulty locating the cancelled checks Collier had previously delivered. Collier implored respondent to close the estate because she was out of money and had used her own savings to pay her aunt's house payments and expenses. Respondent agreed to finish the matter within two weeks.

The two weeks passed and Collier heard nothing from respondent. She made an appointment to meet with respondent at which time he advised her that the inheritance tax would be $7,500 and offered to call the Department of Revenue and inquire about arrangements to pay the tax. Collier became upset with respondent after this meeting because the estate had not been concluded and because respondent had waited to inform her of the tax liability. When respondent again failed to return her phone calls, Collier requested a copy of her file, an accounting of the fees she had paid, and return of the cancelled checks. These materials were not forthcoming.

On May 12, 1986, Collier wrote to the Denver Probate Court Judge concerning these matters. The probate court referee scheduled a meeting among respondent, Collier, and himself on July 7, 1986. Collier appeared but the respondent did not. Respondent wrote to Collier on July 24, 1986, and stated that he owed her $900 and to expect a check within thirty days. Respondent did not pay this obligation until February 3, 1988, two weeks after the Grievance Committee hearing. On March 31, 1988, the respondent paid Collier $1,150 as complete restitution of the monies owed her.

After the meeting with the probate court referee, Collier retained new counsel and the estate was closed on August 18, 1986. There were no estate or inheritance taxes owing since the statute providing for inheritance taxes had been repealed in 1980, and only estates over $400,000 were subject to federal estate taxes in 1985.

On August 7, 1986, respondent was notified by the Grievance Committee of the request for investigation filed against him by Collier; however, he failed to file an answer or otherwise respond to the investigation in violation of C.R.C.P. 241.6(7). The respondent admits that his conduct in this matter violates DR 1–102(A)(1); DR 6–101(A)(2) (handle a legal matter without preparation adequate in the circumstances); DR 6–101(A)(3); DR 7–101(A)(1) (failure to seek lawful objective of client); DR 7–101(A)(2); and DR 9–102(B)(4) (promptly pay or deliver to client property which client is entitled to receive).

II.

The hearing board heard considerable testimony from the respondent concerning the general conduct of his law practice and his personal life. In addition, substantial evidence on these subjects was received from an experienced lawyer with whom the

respondent had shared office space and a psychologist who had seen the respondent during this time.

Certain aggravating factors were also considered by the hearing board; namely, the continuing pattern of neglect of client affairs that was established and the vulnerability of the clients. *See Standards for Imposing Lawyer Sanctions* § 9.22(c) and (h). In mitigation, the board considered the respondent's lack of any prior disciplinary record and the emotional problems he was experiencing. *ABA Standards for Imposing Lawyer Sanctions* § 9.32(a) and (c).

The hearing board found, pursuant to the stipulation of facts, that the respondent violated the Code of Professional Responsibility and failed to cooperate with the Grievance Committee in the Collier matter. It also found that the respondent engaged in serious misconduct, neglect of legal matters entrusted to him, and virtual abandonment of his clients.

We agree with the findings of the hearing board. However, exercising our independent judgment in arriving at the appropriate level of discipline, *see People v. Brown*, 726 P.2d 638 (Colo.1986), we conclude that in view of the respondent's pattern of misconduct, the multiple offenses, the vulnerability of his clients, and his failure to make restitution in a timely fashion, the recommended sixty-day suspension is not an appropriate sanction.

Accordingly, we order the suspension of the respondent from the practice of law for a period of six months commencing thirty days after the date of this opinion. C.R.C.P. 241.21(a). Reinstatement is conditioned on compliance with C.R.C.P. 241.22(c) and (e), and undergoing a mental health examination by a licensed mental health professional. The respondent is also ordered to pay costs of $2,449.81 within ninety days from the date of the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500 S, Denver, Colorado 80202.