Kuhlman and Kuhlman, P.C., Kenton H. Kuhlman, Englewood, for attorney-respondent.

The **PEOPLE** of the State of Colorado, Complainant,

v.

James W. **LAMBERSON**, Attorney–Respondent.

No. 89SA89.

Supreme Court of Colorado, En Banc.

Dec. 24, 1990.

**PER CURIAM.**

In this disciplinary proceeding, disciplinary counsel and the attorney-respondent, James W. Lamberson (Lamberson or respondent), entered into a stipulation of facts which formed the basis for the complaint. The respondent also stipulated that his conduct violated all of the sections of the Code of Professional Responsibility alleged in the complaint and the specified Rules of the Supreme Court concerning discipline. The Hearing Board accepted the stipulation, heard testimony in mitigation offered by the respondent, and made its recommendation that the respondent be suspended for nine months and be assessed the costs of the disciplinary proceedings. A Hearing Panel of the Supreme Court Grievance Committee accepted the findings of fact and recommendations of the Hearing Board, and recommended a suspension of nine months. Objections to the recommendations of the Hearing Board were filed by the disciplinary counsel on the grounds that the recommended discipline is too lenient and that respondent should be suspended for a period of time between a year and a day and three years.

We reject the Panel's recommended discipline, and order that the respondent be suspended from the practice of law for one year and a day and that he pay the costs of these proceedings.

### I.

Respondent was admitted to the bar of this court on May 29, 1985, and is therefore subject to the jurisdiction of this court and its Grievance Committee in these proceedings.

### II.

■ The stipulation in this matter contained four counts of misconduct by the respondent. Respondent admitted the allegations set forth in the four counts.

Count One states that the respondent offered to assist his sister in repaying a loan to Transamerica Financial Services. Between April 1986 and April 1987, respondent wrote seven checks, each for $642, to Transamerica without sufficient funds in his bank accounts to cover the checks. An additional check for $1300 was drawn against respondent's law office account which the bank closed before the check was presented for payment.

Transamerica filed a complaint with the Grievance Committee. An investigation revealed that respondent had covered the checks written to Transamerica. Further investigation disclosed the fact that respondent had written 162 checks totaling $92,-534.05 without sufficient funds in his bank accounts to cover the checks.

Count Two states that the respondent informed the Grievance Committee that he would cease writing checks without sufficient funds to cover them. Respondent proceeded to write thirty-two more checks without sufficient funds to cover them. Respondent also informed the Grievance Committee that he had told his firm of the circumstances of the grievance filed against him. Subsequent investigation revealed that respondent had failed to inform his firm of the grievance proceedings.

Count Three recites respondent's misconduct with regard to a client trust account. In September 1988, Respondent made draws from the trust account totaling $1,837.87 for work done on behalf of several clients. The draws exceeded the amount of funds in the trust account from those clients by $209.17, resulting in the use of other clients' trust funds.

In October 1988, a client paid respondent a $10,000 retainer. In January 1989, the client asked respondent to return the $10,-000 retainer. Respondent complied with the request, knowing that he had already drawn $3,330.45 out of the trust account. This resulted in the withdrawal of $3,300.46 of funds belonging to other clients without their permission.

In December 1988, another client paid respondent a $25,000 retainer. Respondent was handling a number of different cases for the client at that time and made withdrawals as work was completed. In March 1989, respondent discovered that the retainer was to be applied to one particular case. The client requested that the respondent return the unearned portion of the retainer amounting to $17,267.50. Respondent had already withdrawn $15,188.55 from the account, leaving a balance of $9,811.45. Respondent's return of the unearned portion of the retainer required him to use $7,456 of other clients' funds without permission.

In March 1989, respondent's actions resulted in the trust account being overdrawn by $18,661.89. The bank extended credit to the respondent and paid all the checks written on the account. In April 1989, the respondent repaid the bank for the overdrawn amount and closed the trust account.

Count Four states that respondent opened an office operational bank account in September 1988. In March 1989, respondent wrote checks on the operational account, knowing that he was causing an overdraft in the amount of $11,711.23. The overdraft was finally repaid in September 1989.

Respondent admits that the conduct described in the four counts of the stipulation violated Rule 241.6(1) and (7) [1] of the Colo-

---

1.    **Rule 241.6.  Grounds for Discipline**

Misconduct by a lawyer, individually or in concert with others, including the following

802 P.2d—25

acts or omissions, shall constitute grounds for discipline, whether or not the act or omission

rado Supreme Court Rules concerning discipline for attorneys, as well as DR 1–102(A)(1), (4), and (6),[2] and DR 9–102(A)(2) and (B)(3).[3]

Respondent does not have a record of prior discipline.

## III.

In determining the appropriate sanction in this case, we consider the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) [hereinafter *Standards*]. Standard 5.13 provides that a reprimand is appropriate when a lawyer engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law. Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice. ABA *Standards* § 5.12. Suspension is also generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes

injury or potential injury to a client. ABA *Standards* § 4.12.

The Hearing Board considered the aggravating and mitigating factors under section 9.0 of the ABA *Standards*. The Board found the following aggravating factors: dishonest or selfish motive, multiple offenses, submission of false evidence, and substantial experience in the practice of law. In mitigation, the Board found the following factors: absence of a prior disciplinary record; good character or reputation; good faith effort to make restitution; full and free disclosure to the disciplinary board; the presence of personal and emotional problems, as well as mental disability or impairment; and the fact that respondent has sought interim rehabilitation.

■ Although we consider the recommendation of the Grievance Committee and give that recommendation great weight, we reserve the right to exercise our own independent judgment in arriving at the appropriate discipline. *See People v. Goens*, 770 P.2d 1218, 1220 (Colo.1989). We conclude that in light of the serious nature of the

occurred in the course of an attorney-client relationship:

(1) Any act or omission which violates the provisions of the Code of Professional Responsibility;

. . . .

(7) Failure to respond to a request by the Committee without good cause shown or obstruction of the Committee or any part thereof in the performance of its duties. Good cause includes, but is not limited to, an assertion that a response would violate the respondent's constitutional privilege against self-incrimination.

7A C.R.S. (1990).

2.　　　　**DR 1–102　Misconduct.**

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

7A C.R.S. (1990).

3.　　**DR 9–102　Preserving Identity of Funds and Property of a Client.**

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable interest-bearing insured deposito-

ry accounts maintained in the state in which the law office is situated. For the purpose of this rule, "insured depository accounts" shall mean government insured accounts at a regulated financial institution, on which withdrawals or transfers can be made on demand, subject only to any notice period which the institution is required to reserve by law or regulation. No funds belonging to the lawyer or law firm shall be deposited therein except as follows:

. . . .

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

7A C.R.S. (1990).

respondent's misconduct the recommended nine-month suspension is not appropriate.

Accordingly, we order the suspension of the respondent from the practice of law for a period of one year and a day, commencing thirty days after the date of this opinion. C.R.C.P. 241.21(a).[4] We further order that the respondent pay the costs of these proceedings in the amount of $744.14 to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Denver, Colorado, 80202, within thirty days of the date of the announcement of this opinion.

**4. Rule 241.21. Required Action After Disbarment, Suspension, or Transfer to Disability Inactive Status**

**(a) Effective Date of Order—Winding Up Affairs.** Orders imposing disbarment or suspension shall become effective thirty days after the date of entry of the order, or at such other time as the Supreme Court may order. Orders transferring a lawyer to disability inactive status shall become effective immediately upon the date of entry of the order, unless otherwise ordered by the Supreme Court. After the entry of an order of disbarment, suspension, or transfer to disability inactive status the lawyer may not accept any new retainer or employment as a lawyer in any new case or legal matter; provided, however, that during any period between the date of entry of an order and its effective date the lawyer may, with the consent of his client after full disclosure, wind up or complete any matters pending on the date of entry of the order.

7A C.R.S. (1990).