The PEOPLE of the State of
Colorado, Complainant,

v.

Robert Justin DRISCOLL,
Attorney–Respondent.

No. 92SA30.

Supreme Court of Colorado,
En Banc.

June 1, 1992.

Linda Donnelly, Disciplinary Counsel, and James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Robert T. McAllister, Denver, for attorney-respondent.

PER CURIAM.

In this attorney disciplinary proceeding, a hearing panel of the Supreme Court Grievance Committee approved the findings of the hearing board and recommended that the respondent, Robert Justin Driscoll, be suspended from the practice of law for three years, be ordered to pay restitution, and be assessed the costs of these proceedings. Neither the assistant disciplinary counsel nor the respondent has excepted to the recommendation. We accept the hearing panel's recommendation.

I

The respondent was admitted to the bar of this court on October 16, 1974, and is registered as an attorney upon this court's official records. The respondent is therefore subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b).

II

The evidence introduced at the disciplinary hearing in this proceeding consisted to a great extent of unconditional stipulations

by the parties. The respondent testified, however, and two witnesses testified in rebuttal of the respondent's testimony. Based on all of the evidence, the hearing board found that the following facts were established by clear and convincing evidence.

### A

In January 1990, assault cases were filed against Derick Kroener in Adams County District Court and Denver County Court and the respondent agreed to represent Kroener in those two cases. Although no written fee agreement was executed, Kroener agreed to pay the respondent the sum of $1,500 as a retainer for representation in the two assault cases and to provide the respondent with the sum of $5,000 for the purpose of obtaining a bond in the Denver County Court case. The respondent also agreed to represent Kroener in six pending traffic matters. Kroener understood that the respondent would bill him an additional amount for representation in the traffic cases.

On January 22, 1990, Kroener's father, upon Kroener's request, mailed the respondent the sum of $1,500 in payment of the retainer. The respondent accepted the $1,500 and entered his appearance on behalf of Kroener in all of the cases. On January 24, 1990, Kroener's father sent the respondent an additional $5,000, together with a written statement that "[i]n case of a bond reduction or after the trial I request that you or the court return the bond directly to me at the above address."

On January 25, 1990, Kroener's bond was reduced from $5,000 to $1,000 and the respondent, on Kroener's behalf, posted a $1,000 cash bond. On that same day, the respondent cashed the $5,000 check. The respondent did not have a law firm trust account and did not deposit the $4,000 into his operating account. However, the respondent did not return the $4,000 balance to Kroener's father.

On February 8, 1990, Kroener's bond in the Adams County case was increased to $20,000. The respondent contacted Kroener's mother and requested an additional

$3,000 to pay the premium for a $20,000 bond. She told the respondent that she would discuss the problem with her husband, who at the time was out of town, and did not authorize the respondent to retain the $4,000 balance of the funds previously sent to the respondent by her husband. On February 15, 1990, Kroener's father arranged a bond with a bail bondsman and Kroener was released from custody.

Kroener's parents testified at the disciplinary hearing that they never authorized the respondent to apply the $4,000 to their son's attorney's fees. The respondent testified that he believed the Kroeners would support their son's obligation to pay attorney fees and that the $4,000 could be used to satisfy those fees. The respondent has, however, agreed by written stipulation to make payments of $600 per month to Kroener's father until the full $4,000, together with interest, has been repaid.

### B

On April 16, 1990, two days prior to the date set for Kroener's sentencing hearing in one of the assault cases, the respondent and Kroener met in the respondent's office. The respondent presented Kroener with an affidavit prepared by the respondent for Kroener's signature, which affidavit contains the following pertinent language:

I, DERICK KROENER, being duly sworn upon oath, state as follows:

1. I have read the Response of Robert Justin Driscoll.

2. The Response is true and accurate to the best of my knowledge, information and belief.

3. I further affirm and state that when the bond in Denver, Case Number: 89-923232 was reduced from $5,000 to $1,000, I instructed Mr. Driscoll to hold the balance of funds to be applied to either future bonds or attorney's fees still owing.

4. I then contacted my mother and she consented to Mr. Driscoll keeping the funds for use on my cases.

5. When Mr. Driscoll was out of town, I contacted my parents regarding the

bond premium ... and my father sent it to me.

6. My father said he would contact Mr. Driscoll to settle up regarding bond monies, fees, et cetera.

7. I agreed in January to pay Mr. Driscoll $5,000 for his work for me.

8. My father told me he would pay the fee for me and it was based upon that representation that Mr. Driscoll agreed to take my cases.

The respondent stated that he would withdraw from representing Kroener unless Kroener signed the affidavit. Although he knew that the contents of the affidavit were false, Kroener signed it because of the respondent's threat to withdraw as Kroener's attorney.[1]

## C

Between February 1990 and May 1991, the respondent wrote forty-one insufficient funds checks on his business account in the name of Robert Justin Driscoll, P.C. All of those checks were ultimately paid in full.

## III

The hearing board concluded that the respondent's conduct with respect to his failure to return the $4,000 to Kroener's father violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation);[2] DR 9-102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located); and DR 9-102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). The board concluded that the respondent's conduct with respect to obtaining the affidavit from Kroener violated DR 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and DR 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice). The board found that the respondent's conduct with respect to issuing insufficient funds checks violated DR 1-102(A)(6) (engaging in conduct that adversely reflects on fitness to practice law). *See People v. Lamberson*, 802 P.2d 1098, 1099-1100 (Colo. 1990). We agree with these conclusions.

## IV

On February 10, 1986, we publicly censured the respondent for neglect of client matters found to be "attributable to a serious condition of addiction to cocaine and alcohol." *People v. Driscoll*, 716 P.2d 1086, 1088 (Colo.1986). In concluding that a public censure was appropriate, we stated:

> We also find no basis to reject the conclusion that you will continue to abjure any dependency upon drugs or alcohol, and will continue to obtain such professional assistance as may be necessary to assure such personal health. In view of these circumstances, we find this public censure to be an appropriate sanction for your prior misconduct.

*Id.* at 1088-89.

In the fall of 1989, the respondent began using cocaine and alcohol again. He entered an inpatient drug rehabilitation program in February 1990, and was discharged approximately one month later. On January 10, 1991, the disciplinary counsel and the respondent entered into a "Joint Stipulation and Agreement" which provided that the respondent would remain active in Alcoholics Anonymous and Cocaine Anonymous, continue psychotherapy and urine monitoring, request that his psychotherapist and other health professionals file periodic reports with the Office of Disciplinary Counsel addressing the respondent's compliance with the conditions of the joint stipulation, and advise the health profes-

---

1. The record does not indicate what use, if any, was made of this document.

2. The hearing board concluded that the respondent's conduct respecting the $4,000 did not constitute conversion. The assistant disciplinary counsel has not excepted to this conclusion.

sionals to report immediately to the Office of Disciplinary Counsel any evidence that the respondent was using alcohol or illegal substances. The conditions of the stipulation were to remain in force until the appropriate health professional advised that the conditions were no longer necessary. On January 17, 1991, we issued an order for the respondent to comply with the conditions detailed in the Joint Stipulation and Agreement. *People v. Driscoll,* No. 90SA391 (Colo. Jan. 17, 1991) (order).

## V

Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (ABA *Standards*), in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." ABA *Standards* 4.12. In this case, several factors in aggravation were established. The respondent received a letter of admonition in 1982, a second letter of admonition in 1985, and a public censure in 1986. ABA *Standards* 9.22(a). The respondent had a dishonest or selfish motive in his retention of the $4,000 balance of the sum sent to him by Kroener's father for purposes of posting a bond and in his preparation of the false affidavit. *Id.* at 9.22(b). The respondent has also engaged in multiple offenses. *Id.* at 9.22(d). The respondent's use of cocaine constitutes an additional aggravating factor. *People v. Margolin,* 820 P.2d 347, 349 (Colo.1991). Moreover, the respondent prepared the false affidavit and wrote most of the insuf-

ficient funds checks after he was discharged from the inpatient drug rehabilitation program and presumably had discontinued the use of cocaine and alcohol. In mitigation, the board noted the existence of the respondent's emotional and substance abuse problems, his participation in a program of rehabilitation, and his cooperation throughout the proceedings. ABA *Standards* 9.32(c), (e), (j).[3]

After considering the seriousness of the misconduct and the factors in aggravation and mitigation found by the hearing board, we conclude that a suspension for three years, the longest permitted by C.R.C.P. 241.7(2), is warranted. Had the board determined that the respondent knowingly converted the Kroeners' property, or that the Kroeners had sustained serious injury by virtue of the respondent's misconduct, disbarment might well be warranted in this case. However, in view of the respondent's agreement to restitution and in consideration of the contents of our order of January 17, 1991, we accept the three-year suspension recommended by the hearing panel as the appropriate sanction.

## VI

It is hereby ordered that Robert Justin Driscoll be suspended from the practice of law for three years, effective thirty days after the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is also ordered that the respondent shall comply with C.R.C.P. 241.22(b)–(d), and with our order of January 17, 1991, before he may be reinstated. It is further ordered that the respondent shall pay restitution to Kroener's father

---

3. On February 4, 1992, the ABA House of Delegates adopted certain amendments to the ABA *Standards.* In particular, ABA *Standards* 9.22(k) was added, providing that "illegal conduct, including that involving the use of controlled substances," should be considered an aggravating factor. In addition, subsection (i) of ABA *Standards* 9.32, pertaining to mitigating factors, was amended to state:

(i) mental disability or chemical dependency including alcoholism or drug abuse [may be considered as a mitigating factor] when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of the misconduct is unlikely. ABA *Standards* 9.32(i) (Supp.1992). ABA *Standards* 9.32(j), pertaining to interim rehabilitation, was deleted by the 1992 amendments. These amendments were adopted after the actions taken by the hearing board and hearing panel in this proceeding, and thus are not applicable here.

pursuant to the terms of the stipulation heretofore noted. The respondent shall pay the costs of these proceedings, in the amount of $297.41, within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, Dominion Plaza, No. 500–S, 600—17th Street, Denver, Colorado 80202–5435.