The PEOPLE of the State of Colorado, Complainant,

v.

Jeffrey Hugh SACHS, Attorney-Respondent.

No. 86SA435.

Supreme Court of Colorado.

Feb. 17, 1987.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Bennett S. Aisenberg, Denver, for attorney-respondent.

KIRSHBAUM, Justice.

A complaint alleging two counts of professional misconduct was filed with the Colorado Supreme Court Grievance Committee against the respondent, Jeffrey Hugh Sachs. The respondent and the prosecutor have stipulated that the facts alleged in the complaint are true and that the respondent's conduct violated provisions of the Code of Professional Responsibility. After a hearing conducted primarily to consider appropriate sanctions, the hearing board recommended that the respondent be suspended from the practice of law for a period of two years and that he be assessed the costs of these proceedings. A hearing panel unanimously approved the findings, conclusions and recommendations of the board. In view of the facts found by the board, as set forth below, we agree with the hearing panel's recommendation.

I

During 1982 and 1983, the respondent, while a managing partner of the law firm of Sachs, Klein and Seigle, P.C., of Aspen, Colorado, appropriated funds totaling $81,-300 from two client trust accounts for his personal use, without authorization, and also periodically made personal deposits to those two accounts essentially equal in total sum to the amount of unauthorized borrowings. In order to create additional funds for anticipated unauthorized borrowings, the respondent on three occasions deposited fee payments from clients to those trust accounts rather than to the firm's operating account. During this time period the respondent also made unauthorized loans to himself from a savings account established by the firm as a reserve for payment of bonuses to the partners and repaid such unauthorized loans, together with interest.

In July of 1983, the firm's other partners discovered one of these transactions. When confronted with this information, the respondent voluntarily disclosed the entire history of his wrongful conduct. The respondent immediately relinquished all au-

thority to gain access to the firm's accounts, and ultimately left the firm.

## II

From January 31 through July of 1984, the respondent remained of counsel to the firm. During that period of time, he organized a partnership with former clients of his and with others for the purpose of trading nonequity index options listed on the Chicago Board of Options Exchange. The partnership agreement was executed in August of 1984, after the respondent had left the law firm. At that time the limited partners contributed a total of $375,000 to the partnership's capital account. The agreement required the respondent, as general partner, to make a capital contribution of $50,000 by early August of 1984.

The respondent made no independent contribution to the partnership. Instead, he made unauthorized loans of $50,000 to himself from partnership funds, which sum he invested in speculative investments in an effort to earn sufficient profit to enable him to repay the unauthorized loans and pay the partnership contribution. When those efforts failed, the respondent began investment operations with the partnership's account, hoping that his general partner's share of anticipated profits ultimately would enable him to satisfy his debts to the partnership. However, by September of 1984, the respondent had lost all of the remaining partnership capital. When these events were disclosed, various civil claims were threatened by the limited partners against the respondent and his former law firm. All such potential claims were ultimately settled without litigation.

## III

The conduct alleged in the two counts of the complaint violates C.R.C.P. 241.6 and also violates the following provisions of the Code of Professional Responsibility: DR1–102(A)(1) (violation of a disciplinary rule); DR1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation); and DR9–102(A) (unauthorized deposits of funds of clients paid to a lawyer or law firm). The respondent has admitted committing these violations of the Code. The following facts bear on the question of appropriate sanctions.

In December of 1984, the respondent ceased practicing as an attorney, with one exception due to the continuance of a trial matter, and has not held himself out to the public as an attorney since that time. His license was voluntarily registered inactive, effective May 19, 1986. Neither the respondent's former law firm nor any of its clients suffered any financial loss from respondent's misconduct, and the respondent made complete restitution of misappropriated funds long prior to the filing of the complaint in this matter. The respondent fully cooperated in providing all necessary information to an independent accounting firm which audited the law firm's records to verify the particulars of the transactions involved, and the respondent paid the $17,000 audit fee.

With respect to the options trading venture, the respondent expended substantial time and effort during 1985 assisting all interested parties in arriving at a settlement of all claims without resort to litigation. He at all times cooperated fully with the Grievance Committee after being notified of the filing of the complaint, freely acknowledging his misconduct and sincerely accepting the consequences thereof. Although the board found that the respondent was not acting as a lawyer for the investment partnership, the respondent nevertheless acknowledged his fiduciary duty to the investors as a general partner and stipulated that such conduct was disciplinable professional misconduct. The board concluded that it was not likely that the respondent would engage in such misconduct again.

The respondent was admitted to the practice of law in Colorado on April 9, 1965. He practiced law in Denver, Colorado, from 1965 to 1976, and commenced a new law practice in Aspen, Colorado, in 1977. During the next seven years he established a successful law practice and participated ex-

tensively in civic and charitable activities in the Aspen community. He also acquired various real properties, including a personal residence, which were heavily mortgaged. When the real estate market experienced a downturn in 1981, he persisted in expanding his lifestyle beyond his financial means.

The board expressly recognized that such personal financial mismanagement did not in any manner excuse his professional misconduct, but found in mitigation that as a result of his actions the respondent voluntarily suspended his previously successful legal career, lost his position as a community leader, lost his real property through distress sales and foreclosure, and experienced severe depression and marital discord. The board also concluded that although the respondent received a letter of admonition in 1983 for accepting representation adverse to the interest of a former client in a matter substantially related to his prior work for that client, such prior disciplinary matter had little relationship to the circumstances underlying this grievance proceeding. Noting that the pattern of misconduct over a period of time and the respondent's own substantial experience and professional position constituted aggravating factors in this matter, the board unanimously recommended that in view of all of the circumstances a two-year suspension of the respondent's right to practice law would constitute an appropriate sanction.

We agree that the respondent's actions, involving substantial funds and contravening the respondent's obligations to his clients, his law partners and his business associates, were inexcusable. Such professional misconduct substantially undermines the efforts of all lawyers to earn the trust and respect of their clients and the public. We also agree that the respondent is well aware that the breaches of fiduciary responsibility in which he engaged are substantial in nature and that he has accepted full responsibility for such misconduct. On balance, we find the sanctions recommended by the board and adopted by the hearing panel to be appropriate. It must be noted that some members of the court would support the imposition of more significant sanctions in this case.

For the foregoing reasons, the respondent is hereby suspended from the practice of law for a period of two years from the date of this opinion. The respondent shall surrender forthwith to the Clerk of the Supreme Court his license to practice law in this state, and shall comply with all the provisions of C.R.C.P. 241.21 relating to termination of all legal matters, notice to all clients and opposing counsel and maintenance of appropriate records. The respondent shall not be eligible for reinstatement prior to the expiration of the period of suspension herein imposed, and any application for reinstatement must be supported by clear and convincing evidence that the respondent is fit to practice law and has complied with the reinstatement requirements of C.R.C.P. 241.22.

The respondent is further ordered to pay the costs of these proceedings in the amount of $282.61. This sum shall be tendered to the Supreme Court Grievance Committee, 600—17th Street, # 500–S, Dominion Plaza, Denver, Colorado 80202, within sixty days of this date.