**The PEOPLE of the State of Colorado, Complainant,**

v.

**Gary MARGOLIN, Attorney–Respondent.**

**No. 91SA352.**

Supreme Court of Colorado,
En Banc.

Nov. 25, 1991.

---

**348**

Linda Donnelly, Disciplinary Counsel, Jay P.K. Kenney, Asst. Disciplinary Counsel, Denver, for complainant.

Donald J. Humphrey, Jeffrey L. Skovron, Boulder, for respondent.

## PER CURIAM.

A hearing panel of the Supreme Court Grievance Committee unanimously approved the findings and recommendation of the hearing board that the respondent in these attorney disciplinary proceedings be disbarred and assessed costs. Neither the respondent nor the assistant disciplinary counsel has excepted to this recommendation. Considering the seriousness of the respondent's misconduct, which involved the conversion of client funds by means of a fraudulent scheme, we accept the recommendation of the panel and order that the respondent be disbarred and that he pay the costs of the proceeding.

### I

The respondent was admitted to the bar of this court on October 2, 1973, is registered as an attorney upon this court's official records, and is subject to the disciplinary jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). Because of the gravity of the instant charges, the respondent was immediately suspended from the practice of law pending further order of this court on July 27, 1990. *See* C.R.C.P. 241.8. After listening to witnesses called on behalf of the complainant and of the respondent, including the respondent himself, and considering other evidence admitted in the form of exhibits, the hearing board found that the following facts were established by clear and convincing evidence.

On June 1, 1988, the respondent joined the Denver office of the law firm of Popham, Haik, Schnobrich & Kaufman ("Popham Haik") as a partner. Prior to that time, the respondent had done work on behalf of Advanced Mineral Technologies, Inc. ("AMT"). On August 5, 1988, at the respondent's request, AMT sent the respondent a check in the amount of $10,000, payable to Popham Haik as a retainer for legal services to wind down the corporation's affairs and to negotiate with several creditors of AMT.

About ten days later, the respondent placed this check in a new bank account which he opened at a bank in Boulder under the name of "Popham, Haik, Schnobrich & Kaufman, Ltd.—Boulder Special Trust Account." In addition to placing his own signature on the signature cards for the new account, the respondent forged the signatures of two other members of the law firm on the cards. The respondent provided the bank with a falsified corporate resolution purporting to be from Popham Haik, authorizing the establishment of the Boulder account. The respondent forged the signature of one of Popham Haik's principal partners on this resolution. In fact, Popham Haik did not authorize the opening of this account, and did not know that the account had been established in its name. The respondent arranged for bank statements pertaining to the Boulder account to be sent to his home in Boulder.

On October 6, 1988, the respondent signed an escrow agreement as escrow agent, in which he agreed to receive $65,000 from AMT for disbursement to AMT's creditors. AMT wire-transferred the funds into the Boulder account the next day. In addition, on May 1, 1989, the respondent endorsed and deposited a $5,000 check into the Boulder account from another client which was intended for legal services and was made out to Popham Haik. The respondent did not inform the law firm of the receipt or deposit of these funds.

Between August 22, 1988, and April 11, 1990, the respondent withdrew and converted to his personal use approximately $79,570 from the $80,000 in the Boulder account. In February 1990, the respondent deposited $8,500 into the Boulder account.

In March 1990, the respondent falsely told AMT that disbursement checks had been sent to AMT's creditors when in fact no checks had been sent. In April 1990, after being confronted by Popham Haik, the respondent deposited $65,000 which had been provided by his family into the Boulder account, but then he subsequently withdrew $6,300 from the account.

## II

■ The hearing board concluded, and we agree, that the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer); DR 9–102(B)(3) (a lawyer shall maintain complete records of client property in the possession of the lawyer and render appropriate accounts to the client regarding the property); and DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). Finally, by virtue of the foregoing, the respondent also violated DR 1–102(A)(1) (a lawyer shall not violate a disciplinary rule), and C.R.C.P. 241.6 (grounds for lawyer discipline).

## III

The hearing panel unanimously approved the hearing board's recommendation that the respondent be disbarred. At least two of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), apply in this case. In the absence of aggravating or mitigating circumstances, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *ABA Standards* 4.11. Further, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *ABA Standards* 4.61.

■ Thievery and deception on the part of a lawyer corrupt and betray the relationships between lawyer and client and between the legal profession and the public. Thus, disbarment of the dishonest lawyer is usually appropriate. *E.g., People v. Whitcomb,* 819 P.2d 493 (Colo.1991) (conversion of trust funds warrants disbarment); *People v. Kramer,* 819 P.2d 77 (Colo.1991) (lawyer disbarred for obtaining loans by means of false and fictitious "investment plans"); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (attorney disbarred for conversion of client funds); *People v. Calt,* 817 P.2d 969 (Colo.1991) (assisting client in fraudulent scheme to obtain funds from the client's employer warrants disbarment of the lawyer); *People v. Grossenbach,* 814 P.2d 810 (Colo.1991) (conversion of client funds and knowing deception of clients warrants disbarment).

■ We find that there are insufficient mitigating circumstances to call for a sanction short of disbarment. The respondent presented evidence that at the time the Boulder account was established he was addicted to the use of cocaine and that most or all of the converted funds were used to support the respondent's illegal drug habit. The respondent apparently revealed his cocaine addiction to his family in the spring of 1989, and he avers that he has not used cocaine since then. The respondent has not, however, participated in any treatment program for his addiction, voluntary or otherwise. As the hearing board noted, some of the respondent's misconduct occurred after he alleges he stopped using cocaine. Under these circumstances, we are inclined to view the respondent's illegal drug use as an aggravating rather than as a mitigating factor. *Compare In re Stein,* 97 N.J. 550, 565–66, 483 A.2d 109, 117 (1984) (lawyer's use of and addiction to cocaine and amphetamines at the time of misconduct should be considered an aggravating factor because the lawyer committed a crime by illegally acquiring controlled substances) *with In re Johnson,* 322 N.W.2d 616 (Minn.1982) (setting forth five-part test which lawyer must meet in order for that lawyer's alcoholism,

which caused the lawyer's misconduct, to be considered in mitigation).

We agree with the hearing board that restitution of funds that the lawyer has misappropriated from a client is not a significant factor in mitigation. *See In re Wilson*, 81 N.J. 451, 457–61, 409 A.2d 1153, 1156–57 (1979). In addition, restitution that is forced or compelled following discovery of the lawyer's wrongdoing should not be considered a mitigating factor at all. *See ABA Standards* 9.4(a) (forced or compelled restitution should not be considered as either aggravating or mitigating). While the respondent does not have a history of discipline, *see ABA Standards* 9.32(a), that in itself does not call for a lesser sanction under these circumstances. We therefore accept the recommendation of the hearing panel that the respondent be disbarred.

### IV

Accordingly, it is hereby ordered that Gary Margolin be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is ordered that the respondent pay the costs of these proceedings in the amount of $251.36 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202.