The PEOPLE of the State of
Colorado, Complainant,

v.

Darrell E. NULAN, Attorney–
Respondent.

No. 91SA137.

Supreme Court of Colorado,
En Banc.

Dec. 3, 1991.

Linda Donnelly, Disciplinary Counsel,
John P. Gleason, Asst. Disciplinary Coun-
sel, Denver, for complainant.

Kenneth Norman Kripke, Denver, for at-
torney-respondent.

PER CURIAM.

In this attorney discipline proceeding, a
majority of the members of a hearing panel
of the Supreme Court Grievance Commit-
tee approved findings reached by a hearing
board and recommended that the respon-
dent be publicly censured for conduct that
involved dishonesty and misrepresentation
and reflected adversely on the fitness of
the respondent, Darrell E. Nulan, to prac-
tice law. The professional misconduct
arose out of the respondent's wrongful dis-
bursement of escrowed funds to himself
and to a client who was the respondent's
stepbrother. The assistant disciplinary
counsel has excepted to the recommended
discipline as too lenient. We accept the
hearing board's findings of fact and order
the respondent to be suspended from the
practice of law for a period of sixty days.

I

The respondent was admitted to the bar
of this court on July 23, 1975, and is reg-
istered as an attorney upon this court's
official records. He is therefore subject to
the jurisdiction of this court. C.R.C.P.
241.1(b).

The assistant disciplinary counsel and
the respondent entered into an uncondition-
al stipulation of facts and admission of
misconduct which, together with other ex-
hibits, was admitted into evidence before
the hearing board. After considering the
stipulation, the exhibits, and testimony by
the complaining witness, the respondent,
and other witnesses testifying by and on
behalf of the respondent, the hearing board
found the following facts to have been

established by clear and convincing evidence.

In October 1987, the complaining witness, Wiley Barnes, III, and his wife entered into an agreement to purchase the Ebony Rose Restaurant & Lounge, Inc. The respondent represented the shareholder owners of the Ebony Rose, Larry Pierre and Rose Hilner. Larry Pierre is the respondent's stepbrother.

The purchase agreement, which was drafted by the respondent in conjunction with counsel for the Barneses, provided that an initial $4,000 earnest money deposit and an additional $17,500 deposit made by the purchasers "shall be held in the trust fund of [the respondent] pending closing." The agreement provided that the closing would occur no later than January 15, 1988, unless the purchasers did not obtain a liquor license by that date, in which event the closing would occur on a date prior to the expiration of 180 days from the date the agreement was signed. On or about October 10, 1987, the respondent received a cashier's check for $17,500, which sum was deposited into the trust account of respondent's law firm.

On October 12, 1987, Larry Pierre informed the respondent that certain required repairs to the Ebony Rose were only partially completed, that all funds for such repairs were exhausted, and that although Pierre might normally expect financial assistance from the respondent's stepfather, assistance from that source was not available. Pierre expressed concern that if the repairs were not completed the transaction would not be completed, resulting in the loss of the business and Pierre's investment in it. Pierre asked the respondent for a loan or assistance in obtaining additional funds to complete the repairs.

The respondent told Pierre that he did not have the resources available to make a loan at that time, whereupon Pierre asked him to release the escrowed funds for the purpose of completing the repairs. The respondent initially refused, stating that it was improper to disburse the escrowed trust funds and that the respondent could "get into trouble" if the funds did not remain in the trust account. However, the respondent ultimately complied with Pierre's requests. On October 12, 1987, the respondent accepted a promissory note for $17,500, from the Ebony Rose, executed by Pierre as president of the corporation, payable to the respondent's law firm on the latest date that the closing could occur. Between October 12 and November 4, 1987, the respondent signed six checks totalling $17,000 on the law firm trust account for the benefit of various payees. One of the checks was made payable to the respondent for prior legal fees not associated with the Ebony Rose transaction. Another check was made payable to the respondent's stepfather for funds previously advanced for repairs to the Ebony Rose.

In December 1987, anticipating that the purchase agreement would be breached, Wiley Barnes, III, demanded the return of the $21,500 escrowed funds. The parties then attempted to resolve their differences by negotiation, and in the spring of 1988 the respondent notified the attorney for the Barneses that the escrowed funds had been used to pay for repairs to the Ebony Rose. In May 1988, the parties agreed to rescind the purchase agreement and the respondent agreed to return the $21,500 to the Barneses by June 1, 1988. On August 15, 1988, the respondent paid the Barneses $21,500 plus $2,000 representing interest and damages.

## II

The respondent admitted, and the hearing board found, that the respondent's conduct violated DR1–102(A)(1) (violating a disciplinary rule), DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and DR 1–102(A)(6) (engaging in conduct adversely reflecting on the lawyer's fitness to practice law). By virtue of the foregoing, the respondent also violated C.R.C.P. 241.6(1) (violating a provision of the Code of Professional Responsibility), C.R.C.P. 241.6(2) (violating accepted rules or standards of legal ethics), and C.R.C.P. 241.6(3) (violating the highest standards of honesty, justice or morality is grounds for discipline).

■ A majority of the hearing panel approved the recommendation of the hearing board that the respondent be sanctioned by the imposition of a public censure for his conduct. The assistant disciplinary counsel contends that suspension is warranted. In view of all the circumstances, we conclude that suspension from the practice of law for a period of sixty days constitutes an appropriate sanction.

■ When the respondent accepted the buyers' deposits pursuant to the terms of the purchase agreement, he assumed the fiduciary responsibilities of a trustee with respect to these funds. The respondent knowingly and intentionally breached that fiduciary responsibility when he disbursed portions of those funds to himself, his stepfather, and creditors of the Ebony Rose. The intentional misappropriation of funds held in trust for the benefit of others constitutes a serious violation of a lawyer's responsibility to the public as well as a violation of the lawyer's particular fiduciary responsibilities. *See People v. Margolin,* 820 P.2d 347 (Colo.1991) (conversion of client funds by means of fraudulent scheme warrants disbarment); *People v. Whitcomb,* 819 P.2d 493 (Colo. 1991) (conversion of trust funds warrants disbarment); *People v. Kramer,* 819 P.2d 77 (Colo.1991) (obtaining loans by means of false and fictitious "investment plans" warrants disbarment); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (long-term conversion of client funds warrants disbarment); *People v. Calt,* 817 P.2d 969 (Colo.1991) (assisting client's fraudulent scheme to obtain funds from the client's employer warrants disbarment); *People v. Grossenbach,* 814 P.2d 810 (Colo.1991) (conversion of client funds and knowing deception of clients warrants disbarment). Although the escrowed funds were the property of parties who were not clients of the respondent, such circumstance does not alter the fact that the respondent assumed fiduciary responsibility over the funds as a consequence of his role as attorney for a client. Moreover, as a fiduciary the respondent was under an obligation to inform the buyers that he had expended the funds immediately upon his election to violate the conditions of his trusteeship. The respondent instead failed to disclose his misappropriation until the spring of 1988, and even then did not fully describe the various uses to which the funds had been put.

The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (ABA *Standards*) provide that, in the absence of aggravating and mitigating circumstances, disbarment is generally appropriate when "a lawyer engages in ... intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.11(b). The hearing board found the presence of two aggravating factors: substantial experience in the practice of law, ABA *Standards* 9.22(i), and a 1981 violation of the Code of Professional Responsibility which warranted a letter of admonition for dissimilar misconduct. *Id.* at 9.22(a). The hearing board found the following factors in mitigation: (1) the existence of personal or emotional problems at the time of the misconduct, *id.* at 9.32(c); (2) full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, *id.* at 9.32(e); (3) good character and reputation, *id* at 9.32(g); and (4) remorse, *id.* at 9.32(*l*). The hearing board also concluded that the respondent's agreement to return the funds should be considered an additional mitigating factor. However, under the circumstances here presented this factor does not constitute a significant factor in mitigation. See *Margolin,* 820 P.2d at 350. *See also* ABA *Standards* 9.4(a) (forced or compelled restitution should not be considered as either aggravating or mitigating); *In re Wilson,* 81 N.J. 451, 458, 409 A.2d 1153, 1156–57 (1979).

■ The lawyer's mental state at the time of the misconduct is an important factor when considering sanctions. Although the respondent intentionally misapplied the funds, the hearing board concluded that he did so only after he was unable to withstand strong pressure from members of a close-knit family that traditionally had undertaken the responsibilities of sup-

porting each other. The record supports that conclusion. In light of all of the circumstances surrounding the respondent's professional misconduct, including the mitigating and aggravating factors found present, we conclude that a period of suspension from the practice of law for a period of sixty days constitutes an appropriate sanction.

### III

Accordingly, it is hereby ordered that the respondent, Darrell E. Nulan, be suspended from the practice of law for a period of sixty days, effective thirty days from the date of this opinion. C.R.C.P. 241.21(a). It is further ordered that the respondent pay the costs of these proceedings in the amount of $463.67, within thirty days of the date of this opinion to the Supreme Court Grievance Committee, Dominion Plaza, Suite 500–S, 600—17th Street, Denver, Colorado 80202–5435.