**The PEOPLE of the State of Colorado, Complainant,**

v.

**Jay Mark FINESILVER, Attorney–Respondent.**

**No. 91SA109.**

Supreme Court of Colorado, En Banc.

Feb. 18, 1992.

Linda Donnelly, Disciplinary Counsel, Sandra J. Pfaff, L. Michael Henry, Asst. Disciplinary Counsel, Denver, for complainant.

Larry S. Pozner, Denver, for attorney-respondent.

**PER CURIAM.**

A hearing board in this attorney discipline proceeding found that the respondent, Jay Mark Finesilver, converted trust funds and forged a court document. The board recommended that the respondent be disbarred and be ordered to pay restitution and costs. A hearing panel of the Supreme Court Grievance Committee unanimously approved the findings and recommendation of the board. We accept the panel's recommendation and order that the respondent be disbarred.

I

The respondent was admitted to the bar of this court on May 15, 1981. He is registered as an attorney upon this court's official records, and is subject to the disciplinary jurisdiction of this court and its grievance committee. C.R.C.P. 241.1(b). The respondent was transferred, at his request, to disability inactive status on February 23, 1990. C.R.C.P. 241.19. The assistant disciplinary counsel and the respondent entered into an unconditional stipulation, agreement, and admission of misconduct, which was admitted into evidence before the hearing board. After considering this stipulation and the other exhibits tendered by the parties, and after listening to testimony from the respondent and two expert witnesses called by the respondent, the board found that the following facts were established by clear and convincing evidence.

The respondent was the founder, sole shareholder, and chief executive officer of the law firm Jay M. Finesilver, P.C., which was formed in 1986. The firm's practice emphasized bankruptcy and creditor's rights, secured transactions and foreclosures. At its zenith, the law firm employed over forty persons including eight attorneys. In February 1990, however, Jay M. Finesilver, P.C., initiated Chapter 11 bankruptcy proceedings.

Beginning in August 1988, the respondent converted at least $150,000 in trust funds belonging to Attorney's Title Insurance Company. The converted funds were

monies paid by clients of the law firm for services provided by Attorney's Title in the course of foreclosures handled by the law firm. The respondent estimated that over 1,000 transactions were involved in the conversion and misappropriation of the funds of Attorney's Title.

Starting in December 1987, the respondent converted roughly $50,000 in trust funds owed to Security Title Guaranty Company in much the same way he converted the funds belonging to Attorney's Title.

In January 1989, the respondent converted $987.12 belonging to Edward Calloway, the heir of an estate being handled by Jay M. Finesilver, P.C.

The respondent received a certified check in the amount of $85,172.82 for the benefit of his client Victoria Mortgage Company in August 1989. The funds were never paid to Victoria Mortgage but were instead misappropriated by the respondent.

On December 14, 1989, the respondent received a certified check in the amount of $9,540.66 for his client Lomas Mortgage, USA. One week later, the respondent deposited this check into the law firm's cost account rather than the trust account and he used the funds for unauthorized purposes.

The respondent converted and misappropriated additional trust monies from a number of other clients and used the funds for unauthorized purposes. These improper transfers were recorded in a ledger entitled "JMF Trust Transfers to Cover Other Accounts." The ledger itemizes fifty-three such unauthorized transfers beginning in March 1989, reflecting a deficit in the trust account of $109,264 as of January 1990.

In all, the respondent estimated that he converted at least $310,000, and perhaps as much as $395,000, in funds not belonging to the law firm between 1988 and January 1990. The respondent testified that all of the funds that were appropriated from the trust account without authorization were placed into operational accounts of the law firm for the benefit of the law firm and were not taken for his personal use. The hearing board correctly noted, however, that the respondent was the law firm's sole shareholder. The respondent paid himself a salary of $108,000 in 1988, and $87,000 in 1989, from the very bank accounts in which he placed the converted funds.

Finally, the Charles F. Curry Company retained the respondent to handle a foreclosure matter. The respondent misrepresented to his client that the debtor had filed for bankruptcy and that he would immediately seek relief from the stay that had been entered by the bankruptcy court. The respondent forged an order for relief from the stay which purported to be entered by the United States Bankruptcy Court for the Western District of Washington, dated January 4, 1990. The respondent photocopied the signature of a clerk at the bankruptcy court in Colorado and inserted it into the fictitious order.

## II

The hearing board concluded, and we agree, that the respondent's conduct violated DR 1-102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1-102(A)(5) (a lawyer shall not engage in conduct prejudicial to the administration of justice); DR 1-102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law); and DR 9-102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located). Finally, by virtue of the foregoing, the respondent also violated DR 1-102(A)(1) (a lawyer shall not violate a disciplinary rule), and C.R.C.P. 241.6 (grounds for lawyer discipline).

## III

The hearing panel unanimously approved the hearing board's recommendation that the respondent be disbarred. The respondent contends that disbarment would be too severe because of the existence of extraordinary factors in mitigation. He suggests that an appropriate sanction would be a three-year suspension imposed retro-

actively to the date he was placed on disability inactive status, February 23, 1990. Under the respondent's proposal, he would be eligible to seek reinstatement in approximately one year.

We find that at least two of the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*ABA Standards*), apply in this case. In the absence of aggravating or mitigating circumstances, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *ABA Standards* 4.11. Further, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *ABA Standards* 4.61.

"Thievery and deception on the part of a lawyer corrupt and betray the relationships between lawyer and client and between the legal profession and the public. Thus, disbarment of the dishonest lawyer is usually appropriate." *People v. Margolin,* 820 P.2d 347, 349 (Colo.1991); *see also People v. Whitcomb,* 819 P.2d 493 (Colo.1991) (conversion of trust funds warrants disbarment); *People v. Kramer,* 819 P.2d 77 (Colo.1991) (lawyer disbarred for obtaining loans by means of false and fictitious "investment plans"); *People v. Mulligan,* 817 P.2d 1028 (Colo.1991) (attorney disbarred for conversion of client funds); *People v. Calt,* 817 P.2d 969 (Colo.1991) (assisting client in fraudulent scheme to obtain funds from the client's employer warrants disbarment of the lawyer); *People v. Grossenbach,* 814 P.2d 810 (Colo.1991) (conversion of client funds and knowing deception of clients warrants disbarment).

The hearing board determined that the following factors were present in aggravation, and we agree: (1) a dishonest and selfish motive on the part of the respondent, *ABA Standards* 9.22(b); (2) a pattern of misconduct, *id.* at 9.22(c); (3) multiple offenses, *id.* at 9.22(d); and (4) substantial experience in the practice of law, *id.* at 9.22(i). The respondent urges us to find that the following mitigating factors call for the imposition of discipline short of disbarment. Initially, we note that the respondent does not have a prior disciplinary record. *Id.* at 9.32(a).

Next, the respondent's expert witnesses testified to the respondent's personal and emotional problems, *id.* at 9.32(c), and his physical and mental disabilities or impairments, *id.* at 9.32(h). In September 1988, the respondent received treatment on an out-patient basis for his addiction and use of marijuana and cocaine. Insofar as his addiction to illegal drugs was a symptom of more deeply seated psychological and emotional problems, we agree that the respondent established the existence of these allegedly mitigating factors. However, even though the respondent testified that none of the converted funds were used to purchase illegal drugs, we are inclined to view the respondent's illegal drug use itself as an aggravating rather than as a mitigating factor. *Margolin,* 820 P.2d at 349. Moreover, the bulk of the respondent's misconduct occurred after he alleges he stopped using marijuana and cocaine. *See id.*

We also disagree with the respondent's claim that his restitution of some of the converted funds should be considered a significant mitigating factor.[1] *See Margolin,* 820 P.2d at 350 (restitution of funds that a lawyer has misappropriated is not a significant factor in mitigation); *see also In re Wilson,* 81 N.J. 451, 409 A.2d 1153, 1156–57 (1979). Moreover, "restitution that is forced or compelled following discovery of the lawyer's wrongdoing should not be considered a mitigating factor at all. *See*

---

1. The amount of restitution that the respondent has actually made is unclear. At the time of the hearing before the board, the respondent had returned only about $10,000 of the converted funds. We are informed by the respondent in his opening brief to this court that certain settlements have been effected, or are in the process of being entered into, between Jay M. Finesil- ver, P.C., and Attorney's Title, Security Title, and Victoria Mortgage. Even if we were to take notice of the documents purporting to show the existence of these settlements, they would fall far short of establishing that the respondent has made full and complete restitution to the victims that are involved in this proceeding.

*ABA Standards* 9.4(a) (forced or compelled restitution should not be considered as either aggravating or mitigating)." *Margolin*, 820 P.2d at 350.

Other factors in mitigation include the respondent's full and free disclosure to the grievance committee and the hearing board, *ABA Standards* 9.32(e); his good character and reputation, *id.* at 9.32(g); and the respondent's remorse for his wrongdoing, *id.* at 9.32(*l* ). We find, however, that given the nature and the extent of the respondent's misconduct, these mitigating factors are insufficient to justify a sanction less than disbarment. Further, we conclude that the order of disbarment should not be imposed retroactively. *See People v. Abelman*, 804 P.2d 859, 862–63 (Colo.1991). Accordingly, we accept the recommendation of the hearing panel that the respondent be disbarred.

## IV

Accordingly, it is hereby ordered that Jay Mark Finesilver be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is ordered that the respondent pay the costs of these proceedings in the amount of $731.81 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202. It is further ordered that, prior to any application for readmission, the respondent make restitution in full to the victims of his defalcations, together with statutory interest. Because the respondent commingled the trust funds with the other accounts of his law firm, the burden will be upon the respondent at any future readmission proceedings to prove that he has returned all of the converted funds to the reasonable satisfaction of each aggrieved victim.