**The PEOPLE of the State of Colorado, Complainant,**

v.

**Janice R. TANQUARY, Attorney–Respondent.**

**No. 92SA116.**

Supreme Court of Colorado,
En Banc.

June 22, 1992.

Linda Donnelly, Disciplinary Counsel, John S. Gleason, Asst. Disciplinary Counsel, Denver, for complainant.

Janice R. Tanquary, pro se.

PER CURIAM.

The respondent in this attorney discipline proceeding converted trust funds. A hearing panel of the Supreme Court Grievance Committee approved the hearing board's recommendation that the respondent be disbarred, ordered to pay restitution, and assessed the costs of the proceeding. Neither the assistant disciplinary counsel nor the respondent has excepted to the panel's action in accordance with C.R.C.P. 241.-20(b).[1] We accept the hearing panel's recommendation.

### I

The respondent was admitted to the bar of this court on October 17, 1977, is reg-

---

**1.** Although the respondent initially excepted to the hearing panel's action, her exceptions were stricken for failure to file a designation of record as required by C.R.C.P. 241.20(b)(4). *See People v. Smith,* 819 P.2d 497, 498 n. 1 (Colo. 1991).

istered as an attorney upon this court's official records, and is subject to the jurisdiction of this court. C.R.C.P. 241.1(b). On March 15, 1991, the respondent was suspended from the practice of law pending further order of this court based upon the facts underlying the complaint in this case. *People v. Tanquary*, No. 91SA93 (Colo. Mar. 15, 1991) (order); C.R.C.P. 241.8. Based on the testimony at the hearing and the exhibits introduced into evidence, the hearing board found that the following facts were established by clear and convincing evidence.

In 1979, Charlotte Winslow established a trust for the benefit of her niece, Sue Joan Schilling, and her niece's two children. The terms of the trust provided that Schilling was to receive quarterly distributions of one-half of the interest accruing on the principal, and her children were to each receive quarterly distributions of one-quarter of such interest. When she attained the age of sixty, Schilling was to receive one-half of the principal. The children were to each receive one-eighth of the principal at the age of thirty-five, and one-eighth at age forty.

When the original trustee died, the beneficiaries agreed that Schilling would succeed as trustee with the condition that the respondent be granted power of attorney over the trust. The power of attorney authorized the respondent to exercise the trustee's powers, including the power to receive and disburse funds according to the terms of the trust.

In 1985, the respondent asked Schilling to loan her $5,000 from the trust. With Schilling's permission, the respondent withdrew $5,000 from the trust as a personal loan. When she obtained the loan, the respondent did not disclose the conflict of interest between Schilling and her, and did not discuss security for the loan with Schilling. *See People v. Mulligan*, 817 P.2d 1028, 1028 (Colo.1991); *People v. Bennett*, 810 P.2d 661, 664–65 (Colo.1991); DR 5–104(A) (a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, unless the client has consented after full disclosure). The respondent did not sign any type of note and did not repay the loan.

Also in 1985, the respondent began a series of unauthorized withdrawals from the trust account without the knowledge or consent of any of the beneficiaries. Between 1985 and 1989, the respondent converted $62,550 of trust funds in this manner. She continued to administer the trust until November 1990, and received compensation in the form of attorney's fees. The respondent made the quarterly distribution as required and prepared fictional quarterly reports to the beneficiaries which stated that the assets of the trust consisted of a $40,000 certificate of deposit, a money market account with a balance in excess of $30,000, a savings account, and a checking account. Of course, the respondent's withdrawals drastically reduced the amount of trust corpus and the quarterly withdrawals were made from the reduced principal instead of the interest which would have accrued had the principal remained intact.

On November 7, 1990, Schilling and her son-in-law, William Porter, attempted to locate the assets of the trust, but found only a checking account with a balance far below the assets of the trust as represented by the respondent in the quarterly reports. After initially lying to Schilling and Porter about the whereabouts of the assets, the respondent ultimately admitted that she had converted the bulk of the trust funds to her personal use. After a formal demand from the beneficiaries that she reimburse the trust, the respondent has paid $44,631 to the trust. The parties agree that the respondent still owes $41,183 to the trust, which sum represents the loss to the beneficiaries through the unauthorized disbursements, including lost interest as well as principal.

II

The board concluded, and we agree, that the respondent's conduct in withdrawing $62,550 from the trust without the beneficiaries' knowledge and permission, her fail-

ure to repay the $5,000 loan, her preparation of fictional quarterly reports to the beneficiaries, her quarterly disbursements to the beneficiaries of principal, and her lies about the amount that remained in the trust, violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). The preparation of the fraudulent quarterly reports also violated DR 9–102(B)(3) (a lawyer shall maintain complete records of client property in the possession of the lawyer and render appropriate accounts to the client regarding the property); and her failure to fully reimburse the trust violated DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive). Finally, the respondent's conduct has damaged her clients, contrary to DR 7–101(A)(3) (a lawyer shall not intentionally prejudice or damage the lawyer's client during the course of the professional relationship).

### III

The hearing board recommended that the respondent be disbarred for her misconduct. Under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986 & Supp.1992) (*ABA Standards*), in the absence of aggravating or mitigating factors, "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." *ABA Standards* 4.11. Further, "[d]isbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client." *Id.* at 4.61. *See Mulligan,* 817 P.2d at 1028; *People v. Grossenbach,* 814 P.2d 810 (Colo.1991) (conversion of client funds warrants disbarment).

In aggravation, the board determined that the respondent's conduct was both selfish and dishonest, *ABA Standards* 9.22(b); Schilling was an especially vulnerable victim, *id.* at 9.22(h); the respondent

had substantial experience in the practice of law, *id.* at 9.22(i); and the respondent demonstrated a lack of remorse, *id.* at 9.22(j). The mitigating factors advanced by the respondent and noted by the board include the absence of a prior disciplinary record, *id.* at 9.32(a); full cooperation with the grievance committee in these proceedings, *id.* at 9.32(e); and the presence of significant personal and emotional problems, *id.* at 9.32(c). We find, however, that given the nature and the extent of the respondent's misconduct, these mitigating factors are insufficient to justify a sanction less than disbarment. *Compare People v. Finesilver,* 826 P.2d 1256, 1258–59 (Colo. 1992) (disbarment ordered despite presence of emotional problems where attorney converted client trust funds) *with People v. Sachs,* 732 P.2d 633 (Colo.1987) (where attorney had made complete restitution of funds he had converted, and neither the attorney's former law firm nor its clients suffered any financial loss because of the attorney's misconduct, attorney was suspended for two years). Accordingly, we accept the recommendation of the hearing panel.

### IV

It is hereby ordered that Janice R. Tanquary be disbarred and that her name be stricken from the list of attorneys authorized to practice before this court, effective immediately upon the issuance of this opinion. It is further ordered that Tanquary pay the costs of this proceeding in the amount of $340.58 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 500–S, Dominion Plaza, Denver, Colorado 80202. It is further ordered that, prior to any application for readmission, the respondent make restitution in full to the trust and the beneficiaries of the trust in the amount of $41,183, plus statutory interest from November 7, 1990, until paid.