2017 CO 101

**In the MATTER OF Philip KLEINSMITH**

**Supreme Court Case No. 16SA332**

Supreme Court of Colorado.

October 30, 2017

Rehearing Denied November 20, 2017

Rehearing Denied December 18, 2017

Attorneys for Complainant-Appellee: Office of the Attorney Regulation Counsel, Alan C. Obye, Assistant Regulation Counsel, Denver, Colorado

Attorneys for Respondent-Appellant: Philip M. Kleinsmith, Pro Se, Colorado Springs, Colorado

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1 In this attorney discipline proceeding, respondent Philip M. Kleinsmith appeals (1) an order of the Presiding Disciplinary Judge ("PDJ") finding that Kleinsmith violated Rule 1.15A and Rule 8.4(c) of the Colorado Rules of Professional Conduct, as well as former Rule 1.15(b) of these Rules,[1] by knowingly converting funds belonging to a third party; (2) an order of the Hearing Board that Kleinsmith should be disbarred for these violations; and (3) an order of the Hearing Board denying Kleinsmith's post-judgment motions. Kleinsmith principally argues that the PDJ erred in finding that he had knowingly converted funds that were intended for

---

1. Former Colo. RPC 1.15(b) was repealed and replaced with Colo. RPC 1.15A(b) on June 17, 2014. For consistency with the record, we will refer to the rule as "former Colo. RPC 1.15(b)" or "former Rule 1.15(b)."

a third party. In his view, he could not have converted those funds because they were the property of his firm, not the property of the third party. Kleinsmith also argues that the PDJ's reading of the Colorado Rules of Professional Conduct violated his constitutional rights to due process and equal protection.

¶2 Because the PDJ and the Hearing Board properly determined that Kleinsmith engaged in knowing conversion and because we perceive no constitutional violations, we affirm the orders being appealed.

## I. Facts and Procedural History

¶3 The material facts in this case are undisputed. Kleinsmith was admitted to the Colorado bar in 1967, and at all times pertinent here, he was a solo practitioner with the law firm of Kleinsmith & Associates, PC ("K&A"). K&A represented U.S. Bank in seventy-four real estate foreclosure actions in Idaho and Montana between 2012 and 2014. In the course of this work, K&A retained First American Title Company, LLC and First American Title of Montana, Inc. (collectively, "First American") to provide title services for U.S. Bank in connection with the foreclosure cases.

¶4 As pertinent here, First American billed K&A $57,338.00 for its title services. K&A, in turn, billed these costs through to U.S. Bank, although its invoices did not specifically reference First American but rather identified the cost of First American's services as "title commitment." U.S. Bank paid K&A the full amount for First American's title services, and Kleinsmith deposited the funds into K&A's operating account. Rather than paying First American the amounts due and received, however, Kleinsmith used the funds to pay operating expenses of his firm.

¶5 First American subsequently filed a lawsuit in Montana against K&A, but not Kleinsmith, for the unpaid invoices and obtained a judgment in the amount of $55,782.00. Because this judgment was against K&A, and not Kleinsmith, the Montana court ruled that Kleinsmith was not personally liable for it. First American later domesticated the judgment in Colorado and attempted to collect on it. To date, First American has been able to collect only $1,179.20 from K&A through bank garnishments.

¶6 After First American obtained the Montana judgment, one of its attorneys requested that Attorney Regulation Counsel investigate Kleinsmith's failure to pay to First American the amount he received from U.S. Bank for First American's services. Attorney Regulation Counsel then filed a Petition for Immediate Suspension, requesting that the PDJ issue an order to show cause why Kleinsmith should not be immediately suspended from the practice of law while disciplinary proceedings were commenced. Several months later, the PDJ issued a report finding reasonable cause to believe that Kleinsmith had caused immediate and substantial private harm by converting funds. The PDJ thus recommended that this court immediately suspend him from the practice of law. This court accepted that recommendation and suspended Kleinsmith, effective June 10, 2016.

¶7 Attorney Regulation Counsel then filed a disciplinary complaint, alleging that Kleinsmith had violated (1) Colo. RPC 1.15A(b) and former Colo. RPC 1.15(b) (providing that upon receiving funds of a client or third person, a lawyer shall promptly deliver to the client or third person any funds that the client or third person is entitled to receive); (2) Colo. RPC 8.4(c) (providing that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and (3) Colo. RPC 8.4(d) (providing that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice). Kleinsmith responded, denying that he had violated any of the foregoing Rules.

¶8 Shortly thereafter, Kleinsmith filed a motion for summary judgment, seeking the dismissal of the complaint in its entirety, and Attorney Regulation Counsel filed a response and cross-motion for summary judgment. The PDJ ultimately denied Kleinsmith's motion but granted, in part, Attorney Regulation Counsel's cross-motion, finding as a matter of law that Kleinsmith had violated Colo. RPC 1.15A(b), former Colo. RPC 1.15(b), and Colo. RPC 8.4(c). Attorney Regulation Counsel then moved to dismiss the remaining

charge of violating Colo. RPC 8.4(d), the PDJ granted that motion, and the matter proceeded to a sanctions hearing, where the Hearing Board ultimately disbarred Kleinsmith and ordered him to pay restitution to First American.

¶9 Kleinsmith subsequently filed post-judgment motions, which the Hearing Board denied, and he now petitions this court, pursuant to C.R.C.P. 251.27, to review the PDJ and Hearing Board's orders.

## II. Analysis

¶10 Kleinsmith contends that the PDJ erroneously concluded that he converted the funds from U.S. Bank because, under his reading of the Colorado Rules of Professional Conduct, the funds from U.S. Bank were the property of K&A, not First American. Kleinsmith further asserts that the PDJ's orders violated his constitutional rights to due process and equal protection. After setting forth the applicable standard of review, we address these issues in turn.

### A. Standard of Review

¶11 This court "has exclusive jurisdiction over attorneys and the authority to regulate, govern, and supervise the practice of law in Colorado to protect the public." Colo. Supreme Court Grievance Comm. v. Dist. Court, 850 P.2d 150, 152 (Colo. 1993); accord People v. Varallo, 913 P.2d 1, 3 (Colo. 1996) (per curiam). Pursuant to C.R.C.P. 251.27(b), we will affirm the Hearing Board's decision unless we determine, based on the record, that the Board's findings of fact are clearly erroneous or that the form of discipline imposed by the Board (1) bears no relation to the conduct, (2) is manifestly excessive or insufficient in relation to the needs of the public, or (3) is otherwise unreasonable. See In re Gilbert, 2015 CO 22, ¶ 14, 346 P.3d 1018, 1021. We review de novo the Board's conclusions of law. Id.

### B. Violation of Colo. RPC 8.4(c)

¶12 Kleinsmith first contends that the PDJ erred in concluding that his use of the funds at issue for his own purposes constituted knowing conversion and thus violated Colo. RPC 8.4(c). We are not persuaded.

¶13 Colo. RPC 8.4(c) states, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." An attorney's knowing conversion of funds belonging to a client or a third person violates Colo. RPC 8.4(c). See Varallo, 913 P.2d at 10-11 (concluding that an attorney's knowing use of client funds for his personal benefit constituted a knowing misappropriation of those funds and violated Colo. RPC 8.4(c)); People v. Finesilver, 826 P.2d 1256, 1256-57 (Colo. 1992) (concluding that an attorney's conversion of funds paid by clients for services provided by third-party title companies violated Colo. Code of Prof. Resp. DR 1-102(A)(4), the predecessor to Colo. RPC 8.4(c)). The question in this case thus becomes whether Kleinsmith converted the funds at issue.

¶14 Knowing conversion or misappropriation occurs when a lawyer takes money that has been entrusted to him or her by a client or third party, knowing that it is the client or third party's money and that the client or third party has not authorized the taking, regardless of whether the attorney intended to deprive the client or third party of that money permanently. See Varallo, 913 P.2d at 10-11; see also People v. Lavenhar, 934 P.2d 1355, 1358-59 (Colo. 1997) (noting that a lawyer's misappropriation of funds belonging to a third party violates the predecessor to Colo. RPC 8.4(c) and warrants disbarment, absent extraordinary mitigating factors).

¶15 Here, we agree with the PDJ that Kleinsmith knowingly converted the funds paid by U.S. Bank for First American's benefit. U.S. Bank entrusted funds to Kleinsmith specifically to pay for the title services that were provided by First American for U.S. Bank. Kleinsmith knew that the funds entrusted to him were for First American, and he also knew that neither U.S. Bank nor First American had authorized him to use the funds for his own purposes. The funds belonged to First American, not to Kleinsmith, and therefore Kleinsmith's use of the funds for his own purposes constituted conversion of those funds. Accordingly, we con-

clude that the PDJ correctly found that Kleinsmith had violated Colo. RPC 8.4(c). See Varallo, 913 P.2d at 10-11; Finesilver, 826 P.2d at 1257.

¶16 We are not persuaded otherwise by Kleinsmith's contention that the funds that U.S. Bank paid belonged to K&A and therefore he could not have converted those funds. In support of this argument, Kleinsmith relies on Colo. RPC 1.15A(a) and (b), which describe how attorneys should handle funds received by a law firm.

¶17 Colo. RPC 1.15A(a) provides, "A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in trust accounts maintained in compliance with Rule 1.15B."

¶18 Colo. RPC 1.15A(b), in turn, states, in pertinent part:

Upon receiving funds ... of a client or third person, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client or third person, deliver to the client or third person any funds ... that the client or third person is entitled to receive ....,[2]

¶19 Kleinsmith argues that these Rules, when read together with Colo. RPC 1.15B, establish three types of funds received by a law firm: (1) "pure trust funds," which Kleinsmith identifies as property of a client or third person that is entrusted to the lawyer's care; (2) "unincurred expense trust funds," which Kleinsmith identifies as advance payment of fees that have not been earned or of expenses that have not been incurred; and (3) "operating funds," which Kleinsmith identifies as all funds that a firm receives for legal services. Kleinsmith posits that under the Rules, "pure trust funds" and "unincurred expense trust funds" must be placed in a trust account, whereas "operating funds" may properly be placed in a firm's operating account and may be used freely by the firm. According to Kleinsmith, because payments of expenses that have been <u>incurred</u> (like the funds at issue here) are

neither "pure trust funds" nor "<u>unincurred</u> expense trust funds," they must be "operating funds." Thus, he contends that the monies at issue were necessarily property of the firm, and therefore, he could not possibly have converted them.

¶20 Like the PDJ, we reject Kleinsmith's interpretation of the foregoing rules. As the PDJ observed, even if the rules permitted Kleinsmith to place the funds he received from U.S. Bank temporarily in his operating account, nothing in the applicable rules allowed him to treat those funds as his own. The mere fact that the applicable rules do not require funds like those at issue to be kept in a trust account does not mean, as Kleinsmith suggests, that a lawyer may use such funds for his or her own purposes. To the contrary, regardless of where these funds are deposited, a lawyer knowingly converts or misappropriates them when he or she takes them, knowing that they were not intended for him or her and that the taking was unauthorized. See Varallo, 913 P.2d at 10-11; Finesilver, 826 P.2d at 1256-57; see also Lavenhar, 934 P.2d at 1359 (concluding that an attorney improperly converted funds belonging to a third person when the lawyer received money that was clearly intended for another but used some of that money for his personal benefit).

¶21 The plain language of the rules on which Kleinsmith relies supports this determination.

¶22 Specifically, as noted above, Colo. RPC 1.15A(b) states, in pertinent part:

Upon receiving funds ... of a client or third person, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client or third person, deliver to the client or third person any funds ... that the client or third person is entitled to receive ....

¶23 Here, First American unquestionably was entitled to receive the funds from U.S. Bank, and thus Kleinsmith had an obligation to turn over those funds promptly to First American. When he did not do so and instead

---

**2.** Colo. RPC 1.15A(b), the successor to former Colo. RPC 1.15(b), is not materially different. Instead of stating, "funds ... in which a client or third person has an i n t e r e s t ..., it now refers to "funds ... of a client or third person ...."

used the funds for his own purposes, he knowingly converted those funds, thereby violating Colo. RPC 8.4(c). See Varallo, 913 P.2d at 10-11; Finesilver, 826 P.2d at 1257.

¶24 We also are unpersuaded by Kleinsmith's assertions that (1) because First American did not join U.S. Bank in its lawsuit to recover the funds from K&A, First American must not have believed that U.S. Bank was liable for the funds and (2) U.S. Bank therefore did not intend for Kleinsmith to transfer the funds paid by it to First American. We do not see how the second point follows from the first. Indeed, the more logical conclusion from Kleinsmith's premise is that First American deemed K&A, and not U.S. Bank, responsible for its loss, which is fully consistent with our conclusion that K&A wrongfully converted funds belonging to First American.

¶25 Our conclusion mirrors our decisions in Finesilver and a number of cases that followed it.

¶26 In Finesilver, 826 P.2d at 1256-57, a lawyer was found to have violated the predecessor of Colo. RPC 8.4(c) when he converted approximately $200,000 in funds that had been paid by the lawyer's clients for services provided by title companies in connection with foreclosures handled by the lawyer. Affirming an order of disbarment, we concluded that the Hearing Board had correctly found that the lawyer committed knowing conversion and violated the predecessor of Colo. RPC 8.4(c) when he misappropriated "monies paid by clients of the law firm for services provided by [title companies] in the course of foreclosures handled by the law firm." Id.

¶27 Similarly, in Lavenhar, 934 P.2d at 1361, we affirmed a decision to disbar an attorney for knowing conversion in violation of Rule 8.4(c)'s predecessor. In that case, the attorney received a check from his landlord that was intended for a contractor working in the same building as the attorney. Instead of inquiring as to why he received the check, which the attorney knew did not belong to him, he improperly used the funds to pay certain personal and law firm expenses. Id. at 1358.

¶28 And in In re Bilderback, 971 P.2d 1061, 1063-64 (Colo. 1999), we affirmed a finding that an attorney had violated Colo. RPC 8.4(c) and former Colo. RPC 1.15(b) after he collected settlement funds on behalf of an injured client but then did not honor a lien on such funds asserted by the client's doctor to cover services that the doctor had provided to the client.

¶29 Kleinsmith attempts to distinguish Finesilver, Lavenhar, and Bilderback by arguing that the funds at issue in those cases were "pure trust funds" or "unincurred expense funds." None of those cases, however, relied on the distinctions between types of funds that Kleinsmith proproses in this case. Instead, they relied on the attorney's conduct in using for personal purposes funds that the attorney had received from third persons but that were not intended for the attorney. This case presents that precise scenario.

¶30 For these reasons, we conclude that Kleinsmith's actions constituted knowing conversion. Accordingly, we agree with the PDJ's finding that Kleinsmith violated Colo. RPC 8.4(c) here.

## C. Constitutional Claims

¶31 Kleinsmith next argues that the PDJ's interpretation violated his constitutional rights to due process (because, he says, the types of funds contemplated by the applicable Rules, and the proper uses of such funds, are unconstitutionally vague) and to equal protection. We address and reject each of these assertions in turn.

¶32 First, Kleinsmith contends that the Rules do not make clear which funds a firm must treat as "trust funds" (i.e., property of a client or third party not to be used by the lawyer for his own purposes) and which funds a firm can treat as "operating funds" (i.e., property of the firm that can be used however the lawyer sees fit). He asserts that the PDJ treated all funds received by a law firm as "trust funds," rendering the definitions in the Rules contradictory and vague and thus violating his right to due process.

¶33 Because disciplinary rules are promulgated for the purpose of guiding lawyers in their professional conduct, "the cen-

tral consideration in resolving a vagueness challenge should be whether the nature of the proscribed conduct encompassed by the rule is readily understandable to a licensed lawyer." See People v. Morley, 725 P.2d 510, 516 (Colo. 1986).

¶34 Here, we conclude that Rule 8.4(c), Rule 1.15A, and former Rule 1.15(b) are clear and that a licensed lawyer can easily understand that taking for his or her own use funds that a client has paid the lawyer to cover the cost of specific services provided by a third party for the client's benefit constitutes knowing conversion and violates Colo. RPC 8.4(c). Indeed, to the extent that Kleinsmith identifies any confusion, he has created that confusion through his own misreading of Colo. RPC 1.15A(a) and (b). Even if Kleinsmith's interpretation of these Rules were somehow plausible, however, like a statute, a rule "is not impermissibly vague simply because it can be given two different interpretations." People v. Young, 694 P.2d 841, 842 (Colo. 1985).

¶35 Second, Kleinsmith contends that the PDJ's decision violates his right to equal protection because the decision subjects him—as an agent of a law corporation—to a penalty to which non-lawyer agents of other corporations would not be subject.

¶36 Kleinsmith has not asserted that he is a member of a suspect class or that the proceedings before the PDJ interfered with his exercise of a fundamental right. Accordingly, for Kleinsmith to establish an equal protection violation, he must show that any differing treatment that he experienced did not rationally further a legitimate state interest. See Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312-14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

¶37 Here, Colorado has an indisputable interest in regulating attorneys, as opposed to laypeople, in order to protect the public. See Goldfarb v. Va. State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (recognizing that states have a "compelling interest in the practice of professions within their boundaries" and that states therefore have "broad power to establish standards for licensing practitioners and regulating the

practice of professions"). Moreover, enforcing the applicable Rules of Professional Conduct is, on its face, rationally related to achieving this legitimate state interest.

¶38 Accordingly, we conclude that Kleinsmith has not established a violation of any of his constitutional rights here.

### III. Conclusion

¶39 For these reasons, we conclude that the PDJ properly found that Kleinsmith had converted funds belonging to First American and that in doing so, he violated Colo. RPC 8.4(c), Colo. RPC 1.15A, and former Colo. RPC 1.15(b). Accordingly, we affirm the orders of the PDJ and the Hearing Board, including the order disbarring Kleinsmith from the practice of law.

JUSTICE EID dissents, and JUSTICE COATS joins in the dissent.

JUSTICE EID, dissenting.

¶40 Today the majority upholds the order of the Presiding Disciplinary Judge finding that respondent Kleinsmith knowingly converted funds belonging to a third party and therefore violated Rules 1.15A and 8.4(c) of the Colorado Rules of Professional Conduct. There is no question that Kleinsmith's firm owed First American for the title services it performed. But the majority never truly grapples with the difficult issue presented in this case—namely, whether Kleinsmith's failure to pay First American should be treated as failure to pay a debt, which plainly occurred here, or a knowing conversion meriting disbarment. For this reason, I respectfully dissent from its opinion.

¶41 The majority concludes that Kleinsmith's conduct constituted knowing conversion because "[the bank] entrusted funds to Kleinsmith specifically to pay for the title services that were provided by First American for [the bank]." Maj. op. ¶ 15. Those funds were "for First American" and Kleinsmith was not authorized "to use the funds for his own purposes." Id. Ultimately, the majority reasons that Kleinsmith converted those funds because "[t]he funds belonged to First American, not to Kleinsmith[.]" Id.

¶42 The majority's description of Kleinsmith's conduct suggests the funds here were of a special character, or that there was a special relationship between the bank and First American, but that is simply not the case. The bank never "entrusted" funds specifically to Kleinsmith in the legal sense of the term. There was no trust or fiduciary relationship between the bank and First American. Indeed, there was no relationship at all between the two. Instead, Kleinsmith's firm hired First American to conduct title services. The firm billed the bank for "title commitment" services, but did not mention First American. Maj. op. ¶ 4. Thus, the bank could not have "entrusted funds" for First American, nor could there have been an entrustment of "specific" funds, or "specific" direction to pay the funds to First American. Similarly, the funds did not "belong" to First American in any legal sense; instead, Kleinsmith's firm owed a debt to First American, as the Montana judgment concluded. Id. at ¶ 5.

¶43 The majority's conclusion that Kleinsmith's "conversion" of funds was "knowing" fares no better. As the majority recognizes, a "knowing" conversion requires the lawyer to know that the funds were someone else's. Id. at ¶ 14 (citing People v. Varallo, 913 P.2d 1, 10-11 (Colo. 1996)). Kleinsmith had no intention to "misappropriate" or "convert" the funds because he believed that he was entitled to use the funds in question to cover operating expenses of the firm. Id. at ¶ 4. His intention was to prioritize the payment of his ailing firm's expenses, not to defraud either the bank or First American. The cases relied upon by the majority are thus distinguishable, as they involve personal use of funds, multiple violations, or both. See, e.g., In re Bilderback, 971 P.2d 1061, 1063-64 (Colo. 1999) (finding that respondent committed multiple acts of misconduct, including "effectively abandon[ing]" his clients as well as refusing to remit settlement funds in accordance with his client's wishes); People v. Lavenhar, 934 P.2d 1355, 1358-59 (Colo. 1997) (finding that respondent committed multiple violations of the Rules of Professional Conduct, including "seriously neglect[ing] a number of client matters," as well as converting a check he received by mistake and using those funds to purchase appliances); People v. Finesilver, 826 P.2d 1256, 1256-57 (Colo. 1992) (finding that respondent converted funds from "a number" of clients and paid himself sizable salaries from those converted funds). While Kleinsmith's conduct should not be encouraged, it does not, in my view, merit disbarment, the "most severe sanction which we have the authority to impose." People v. Brown, 726 P.2d 638, 641 (Colo. 1986).

¶44 Presumably the majority attempts to give the funds and the relationship at issue here a special character because it hopes to separate out this case from one involving an ordinary debt. But because that attempt is unsuccessful, in my view, the majority gives virtually no guidance to practitioners regarding when they are potentially engaging in misconduct. Indeed, the opinion today simply creates a new category of funds that are "entrusted" to the attorney and that "belong" to the service provider to whom the debt is owed, but have no special character under the law. Because today's opinion muddies, rather than clarifies, the waters of how funds should be handled by practitioners, I respectfully dissent.

I am authorized to state that JUSTICE COATS joins in this dissent.