**The PEOPLE of the State of Colorado, Complainant,**

v.

**Alison MAYNARD, Respondent.**

**No. 07PDJ067.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 13, 2008.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2009.

**OPINION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19**

### I. *ISSUE*

A lawyer who deceives or attempts to deceive a court acts unethically. Respondent mailed a brief to the Supreme Court and *intentionally* backdated it to make it appear to be timely filed. Thereafter Respondent filed a misleading document in opposition to a motion to dismiss her untimely brief. Before the court took any action on this motion, Respondent admitted her deception. Did Respondent act unethically? If so, what is the appropriate sanction?

After carefully reviewing the evidence and considering the arguments of counsel, the Hearing Board finds clear and convincing evidence that:

- Respondent violated Colo. RPC 1.3 by failing to file her appellate brief with *reasonable promptness.*

- Respondent violated Colo. RPC 3.3(a)(1) by making a *materially false* statement of fact to the Colorado Supreme Court ("the Court or Supreme Court") when she knowingly and falsely dated her brief and certificate of mailing showing it was timely filed when she knew it was not. She also violated Colo. RPC 3.3(a)(1) when she filed a motion in opposition to a motion to dismiss her brief as untimely. In her motion, Respondent affirmatively stated to the Court that her brief was timely when she knew it was not.

- Respondent violated Colo. RPC 8.4(c) by engaging in conduct involving misrepresentation and dishonesty when she *intentionally* submitted her brief to the Colorado Supreme Court late, affirmatively argued that it was timely, and then later compounded her deceit by providing the Colorado Supreme Court with a misleading document to support her specious claim.

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FOR ONE YEAR AND ONE DAY, ALL BUT SIXTY (60) DAYS STAYED UPON THE SUCCESSFUL COMPLETION OF A TWO-YEAR PERIOD OF PROBATION WITH CONDITIONS.**

### II. *PROCEDURAL HISTORY*

On October 3, 2007, the People filed a Complaint against Respondent alleging violations of Colo. RPC 1.3, 3.3(a)(1), and 8.4(c), Claims I, II, and III respectively. Respondent filed an Answer to the People's Complaint on November 1, 2007.

On January 25, 2008, the People filed "Complainant's Motion for, and Brief in Support of, Judgment on the Pleadings." On February 11, 2008, Respondent filed her "Response in Opposition to Complaint's Motion for, and Brief in Support of Judgment on the Pleadings." On March 19, 2008, the PDJ denied the People's Motion for judgment on the pleadings and the case was set for hearing on its merits on March 28, 2008.

## III. FINDINGS OF MATERIAL FACT

The following material facts arise from the pleadings, exhibits, and affidavits provided by the parties.[1] The Hearing Board finds that the following facts have been established by *clear and convincing evidence.*

### Background

Respondent has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court ("Supreme Court") on May 20, 1987, and is registered upon the official records, Attorney Registration No. 16561. She is therefore subject to the jurisdiction of this court in these disciplinary proceedings.

After graduating from Cornell University in 1966 with a degree in physics, Respondent worked as a geophysicist for two years with an oil company. In 1983, she enrolled in the University of Denver College of Law and graduated in 1986. Following graduation and admission to the bar, Respondent worked in Colorado as a deputy district attorney, an assistant attorney general, and a city attorney. In 1991, she began work as a solo practitioner and now primarily practices water law, land-use law, and general civil litigation. Approximately 20% of her practice deals with appellate law. Many of her clients seek representation in public interest litigation; Respondent performs much of this work *pro bono* or on a reduced fee basis.

### The CPA Litigation

Beginning in 2000, and continuing until November 2006, Respondent represented The Citizens Progressive Alliance ("CPA") against the State of Colorado, the United States of America, and the Ute Tribes of Colorado ("the Tribes").[2] In 2002, the United States of America, acting for the benefit of the Tribes in Colorado, petitioned the water court in Durango to amend a Consent Decree regarding the Tribes' reserved water rights under the Animus–La Plata Project ("ALP"). Respondent, representing CPA, intervened and opposed the proposed amendment.

On behalf of her clients, Respondent raised several arguments in the Water Court, Division 7, including, but not limited to lack of subject matter jurisdiction to amend the consent degree, failure of the proponents of the amendment to demonstrate *diligence,* and failure to show the reserved water rights at issue would be put to a *beneficial use.* On November 9, 2006, District Court Judge Lyman ruled against CPA and granted the request to amend the consent decree on behalf of the Tribes.

CPA decided to appeal Judge Lyman's ruling allowing the amendment to the consent decree of reserve water rights of the Tribes. Respondent, on behalf of CPA, filed a notice of appeal of Judge Lyman's ruling with the Supreme Court, Case No. 06SA388, on December 26, 2006.

### Requests for Extensions of Time

Respondent's opening brief was originally due on May 8, 2007. However, on May 8, 2007, Respondent filed a "Motion for One–Week Extension." The Supreme Court granted her request and set a new due date of May 15, 2007. Thereafter, Respondent made four additional requests to extend the filing date of her brief and the Supreme Court granted each request.[3] However, on

---

1. These findings are also based upon the testimony presented in the hearing, the party's stipulated exhibits 1–16 and Respondent's exhibits A, B, and C.

2. The proponents of the amendment included the Southwestern Water Conservation District, the State of Colorado, the United States of America, the Ute Indian Tribe and the Ute Mountain Ute Tribe.

3. See Stipulated Exhibits 10–18.

March 25, 2008, the Supreme Court entered an order with the following written admonition, "NO FURTHER EXTENSIONS." With this final extension, the Supreme Court gave Respondent until June 19, 2007 to complete her brief.

Although the Supreme Court admonished her that no further extensions would be granted, Respondent failed to complete the brief by June 19, 2007. From March 25, 2007 until June 19, 2007, a period of 86 days, Respondent worked on CPA's brief and other client matters, but admittedly gave no particular priority to CPA's brief.

With the final deadline looming, Respondent realized that she would be unable to complete her brief on time. While she had worked approximately forty hours on the brief and had completed a draft at that point, she was dissatisfied with its quality. Aside from the task of completing the written brief, Respondent testified that she had to contend with a disorganized and voluminous record from the water court in the CPA appeal. Despite her concerns about completing the brief by June 19, 2007, Respondent failed to advise the Supreme Court of her inability to complete the brief in a timely manner. Instead of filing the draft she completed at that point, she contemplated a means by which she could submit it after the Court's deadline.

### Untimely Filing of Brief

Following the final deadline, June 19, 2007, Respondent worked approximately 36 additional hours on the brief and filed it with the Supreme Court on June 23, 2008.[4] However, in order to make the brief appear to be timely filed, Respondent placed a stamp she purchased on June 19, 2007 on the envelope containing her brief and mailed it to the Supreme Court. The stamp, which she purchased from an automated machine, bore the date of June 19, 2007. She kept the receipt and later supplied it to the Supreme Court as proof that she had in fact mailed and filed her brief on June 19, 2007 as the Court ordered.

In addition, Respondent certified on the final page of her brief that she had mailed it on June 19, 2007. In these proceedings, Respondent testified that she rationalized her duplicity by "compartmentalizing" in her mind her deceitfulness and focused solely on the goal of providing a quality brief on behalf of CPA. Nevertheless, Respondent knew her conduct in deceiving the Court was unethical.

### Motion to Dismiss

On June 22, 2007, the United States of America and other parties to the appeal ("appellees") filed a motion to dismiss CPA's appeal for failure to file an opening brief and for failure to prosecute the appeal.[5] In their motion, the appellees stated that as of June 22, 2007, Respondent had not filed her brief. They therefore requested that her appeal be dismissed for failure to prosecute.

On or about June 25, 2007, the Supreme Court clerk received and date-stamped Respondent's "Response to Motion to Dismiss Appeal."[6] In response to her opponent's motion to dismiss the appeal, Respondent made the following written misrepresentations and false statements to the Supreme Court in an effort to demonstrate that she had indeed filed her brief on June 19, 2000:

- "I mailed the opening brief to the Court and obtained a postmark on the due date, June 19, 2007. Rule 25(a)(1), C.A.R., says, '[B]riefs shall be deemed filed on the day of mailing if the most expeditious form of delivery by mail, excepting delivery, is utilized.' The briefs were sent by Priority Mail. *See* **the receipt attached as Exhibit A. (Emphasis added)**.

- "I admit I did not effect service on the parties until the evening of June 20, so am herewith filing an amended certificate of service. I consent in advance to

---

**4.** Stipulated Exhibit 2, Respondent's Opening Brief.

**5.** Stipulated Exhibit 1, C–71.

**6.** Stipulated Exhibit 3, C–13. The PDJ notes, however, that in its findings on the judgment on the pleadings, the date of this filing was June 23, 2007. The Supreme Court received and stamped this pleading on June 25, 2007. The pleading is dated June 23, 2007.

the Appellee's taking three extra days in its response, due to the delay."

- "WHEREFORE, the brief having been timely filed, according to the rules, Appellee's motion to dismiss appeal must be denied."

On June 25, 2007, the Supreme Court received and stamped Respondent's Amended Certificate of Service.[7] In her amended certificate of service, Respondent asserted that she had mailed her brief to the parties on June 20, and not on June 19 as she had originally alleged. In fact, Respondent did not obtain service of the opening brief on the parties on June 19 or 20, 2007, and her statement to that effect was knowingly and intentionally false.

### Respondent's Admission

Respondent eventually contacted Philip Doe, the president of CPA, and notified him that she had filed CPA's appellate brief with the Supreme Court by misrepresenting to them that her brief was timely filed when it was not. Respondent thereafter decided to advise the Supreme Court of her subterfuge. Respondent first called the Supreme Court to find out if her brief had been accepted. Respondent testified that when the clerk of the Supreme Court told her the brief had been accepted; Respondent admitted to the clerk she had not timely filed the brief.

On June 28, 2007, immediately following her conversation with the clerk, Respondent filed an "Admission; and Motion for Last Extension, or Withdrawal of Brief" with the Supreme Court. In her motion, Respondent admitted that she had made "misrepresentations" to the Supreme Court, because she had felt "boxed in."[8] She also advised the Supreme Court that researching the record in CPA's appeal had been a "nightmare." Respondent went on to state, "Should the Court not forgive this offense, and *grant* the extension, I withdraw the brief."[9] In addition to requesting an additional extension,

Respondent also advised the Supreme Court, "I also commit to obtain counseling so that I can overcome this problem I have of not getting my work done on time."[10]

By order dated July 2, 2007, the Supreme Court granted appellee's motion to dismiss CPA's appeal.[11]

### Character Witnesses

Respondent called three witnesses who generally testified to her skill and resolve as an attorney, loyalty to her clients, good character, and honesty. The first witness, Chairman of CPA, Phillip Doe, thought Respondent filed a "masterful" brief on behalf of CPA, albeit late. He holds Respondent in the "highest regard." Mr. Doe testified that Respondent worked closely with him and the diverse CPA board on this litigation. Despite his knowledge that Respondent misrepresented matters to the Court, Mr. Doe believes Respondent is a "terrific citizen."

Paul Upsons is an attorney who worked as Respondent's associate approximately six years ago. Mr. Upsons found Respondent to be a skilled writer who was diligent and dedicated to her clients. He never experienced problems with deadlines while working with Respondent and found his experience with her to be positive. Recognizing the allegations against her in this case, he still believes Respondent is "generally" of very good character.

Ann Bonnell testified as to her favorable impression of Respondent's work in the Castlewood State Park litigation, in which Respondent represented clients in a *pro bono* capacity. As a citizen, Ms. Bonnell felt local government acted "illegally" in developing this property. Ms. Bonnell opined that it is hard to find a lawyer who will do this kind of work. As a result of approximately 400 hours *pro bono* work on the part of Respondent, Ms. Bonnell testified that the South Suburban Parks established a wildlife corri-

---

7. Stipulated Exhibit 4, C–17. Respondent dated this motion June 23, 2007.

8. Stipulated Exhibit 5, C–07.

9. Stipulated Exhibit 5, C–11

10. Respondent testified that her statement referred not to psychological counseling but to counseling with a practice monitor who could help her meet deadlines.

11. Stipulated Exhibit 7, C–02

dor and developers agreed to provide $50,000.00 for protection of backdrop views by granting an open face mine lease for 99 years. Ms. Bonnell found Respondent to be extremely honest and straightforward. Ms. Bonnell's experience with Respondent renewed her faith in lawyers. She testified that even honest people make mistakes and the most important thing is that Respondent corrected her mistake.

### Testimony from Respondent

Respondent views her work as an attorney as a profession and not as a business. Her primary interest is in "righting wrongs." Therefore, she often charges low fees or provides *pro bono* services. In one such *pro bono* case, she exposed wrongful acts of city officials in Park County. Litigation in the CPA matter lasted from 2001 to 2006. In this litigation, CPA still owes her $23,000.00, which was billed at $40.00/hour. She did not charge for the appeal, a matter she felt presented "strong issues" for CPA.

Even though CPA lost their right to appeal due to the actions of Respondent, she still represents CPA in other litigation. While working on the diligence and beneficial use issues in the Animus–La Plata Project ("ALP"), she also performed work on a time-consuming appeal pending on the "reserve" issue in that case.[12] Respondent testified that she took on more work than she should have during this time.

After attempting to convince the Supreme Court that she had timely filed her brief, Respondent spent a sleepless night and "didn't like living with [herself]." Respondent testified that she felt like a "hypocrite" because she had previously alleged that the judge in the case below had been deceptive. Respondent also testified that she recognizes she breached her duty of honesty and candor to the Supreme Court.

### IV. CONCLUSIONS OF LAW— SUBSTANTIVE ALLEGATIONS

The Hearing Board makes the following legal conclusions based upon the clear and convincing evidence.

### Lack of Diligence and Neglect of a Legal Matter under Colo. RPC 1.3.

Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to the lawyer. The People allege that Respondent neglected a client matter and violated Colo. RPC 1.3 when she failed to timely file the opening brief with the Supreme Court. Respondent contends that she was unable, through *reasonable* efforts, to complete the opening brief on time.

■ It is undisputed that Respondent failed to file her opening brief on or before the final deadline of June 19, 2007. The clear and convincing evidence is that Respondent failed to act with diligence after requesting numerous extensions in which to file her brief. Even though Respondent claims to have logged a total of 98.5 hours on CPA's brief, she testified that she logged approximately 36 of those hours *after* the deadline for the filing of the brief.

Furthermore, the Supreme Court gave Respondent an additional 86 days to complete the brief following the last extension. Had Respondent worked one hour a day on the brief during this time frame, she would have been able to put in the additional 36 hours it took her to complete the brief. However, Respondent failed to prioritize the completion of the brief during these 86 additional days.

Failing to complete the brief during this timeframe, given the multiple extensions Respondent requested and received, demonstrates not only a lack of diligence as contemplated in Colo. RPC 1.3, but it also her neglect of CPA's appeal.

We hasten to add that this conduct demonstrates more than simply failing to meet a deadline. Respondent failed to complete CPA's brief after obtaining numerous requests for extensions. This conduct not only shows a lack of diligence, but also neglect of a client matter.

12. Respondent's Exhibit C.

### False Statement under Colo. RPC 3.3

Colo. RPC 3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of *material* fact or law to a tribunal. Respondent argues that the misrepresentations and statements she made in her pleadings to the Supreme Court were *not material* because she withdrew them before the Supreme Court acted upon them. Therefore, her misstatements were not material because the Court took no action as a result of them.[13] First of all, the Hearing Board specifically finds that the Supreme Court, acting through the clerk, accepted her brief as timely filed, based upon a misleading postmark and certification Respondent provided the Court.

■ Secondly, the Hearing Board further finds that even though Respondent disclosed her scheme to the Supreme Court before it acted upon the merits of her brief or the motion to dismiss, her misrepresentations nevertheless had the *potential* to mislead the Supreme Court on the matter in controversy, the timeliness of Respondent's brief. *See U.S. v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

We therefore reject Respondent's definition of materiality as that term is used in the Colorado Rules of Professional Conduct. Lawyers must act with the candor and honesty as officers of the court even when they *perceive* justification for doing so. *See In re Pautler,* 47 P.3d 1175, 1176 (Colo.2002).

In this case, nothing justified Respondent's deception except her professed need to write the best brief possible. Even though Respondent may have viewed her conduct as zealous representation, it was not. First, zealous representation as that term is used in the Colo. RPC *starts* with diligent preparation of the client matter. Second, zealous representation of a client is always within legal and ethical constraints. The clear and convincing evidence is that Respondent neither acted with diligence nor within ethical and legal rules our Court recognizes.

Nevertheless, we also find that Respondent's act of coming forward to remedy her misconduct by self-reporting is both commendable and *substantial* evidence of mitigation. It does not, however, immunize her from violation of Colo. RPC 3.3(a)(1).

### Dishonesty under Colo. RPC 8.4(c)

Colo. RPC 8.4(c) states that it is professional misconduct for a lawyer to engage in *conduct involving dishonesty, fraud, deceit or misrepresentation.* Respondent consciously misrepresented the date she filed, signed, served, and mailed her opening brief. In addition to her initial misrepresentation, Respondent compounded her dishonesty when tendered a receipt dated June 19, 2007, in a further attempt to support her misrepresentations to the Court and opposing counsel. These statements and actions were dishonest, deceitful, and consciously misrepresented the truth. Thus, the Hearing Board finds clear and convincing evidence Respondent violated Colo. RPC 8.4(c).

## V. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards* ") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. The appropriate sanction depends upon the facts and circumstances of each case.

### Analysis Under the ABA Standards

The Hearing Board considered the following three standards in addressing the appropriate sanction in this case.

ABA *Standards* 6.11 deals with duties a lawyer owes to the legal system. It states in the absence of aggravating or mitigating circumstances and application of Standard 3.0:

> Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or

---

**13.** Respondent cites several cases in her hearing brief dealing with materiality in the civil context. We find that they are inapplicable to disciplinary matters where the focus is on lawyer conduct not solely on the ultimate outcome.

potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

ABA *Standards* 6.12 states as follows:

Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

ABA *Standards* 6.13 states as follows:

Reprimand is generally appropriate when a lawyer is negligent either in either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the proceeding.

We find that ABA *Standard* 6.11 applies.

However, before imposing a sanction after a finding of lawyer misconduct, ABA *Standard* 3.0 directs the Hearing Board to first consider the following factors to determine whether the presumed sanction is appropriate:

- The duty violated;
- The lawyer's mental state;
- The actual or potential injury caused by the misconduct; and
- The existence of aggravating or mitigating factors.

## A. THE DUTY VIOLATED

The Hearing Board finds Respondent primarily violated duties to her client (CPA), the Supreme Court, and opposing counsel. The Supreme Court expects lawyers to act with candor. Even though CPA, through its chairman, continues to hold Respondent in high regard, Respondent violated her duty to

CPA by failing to act in a reasonably diligent manner and timely file CPA's opening brief. Through her misguided zeal, Respondent's client lost its right to appeal.

Respondent also violated her duty to the legal profession. When the public witnesses lawyers acting dishonestly, they hold the profession in disrepute and consequently the esteem of the profession suffers.

## B. THE LAWYER'S MENTAL STATE

The Hearing Board finds that Respondent acted with negligence and without reasonable diligence when she failed to timely file her brief after receiving five extensions on the same.[14]

Respondent acted *knowingly and intentionally* when she dishonestly certified that she had filed her brief in a timely manner and later when she provided a misleading document to the Supreme Court to support her position. Respondent knew she had not filed her brief on June 19, 2007, and acted intentionally; that is with the conscious object of trying to convince the Court otherwise. *See* ABA *Standards* 4.11 and Definitions ("Knowledge and with intent").[15]

## C. THE ACTUAL OR POTENTIAL INJURY

The Hearing Board finds Respondent caused serious potential and actual injury to her client, CPA, as well as the Supreme Court when she deceived and attempted to deceive the Supreme Court. Potentially, Respondent's misrepresentation could have resulted in extensive appellate litigation founded on the false statement that her brief was timely filed. Equally, important is the fact that Respondent's client, CPA, lost their right to an appeal based upon her neglect and misconduct in an effort to deceive the Supreme Court. Finally, Respondent's conduct caused serious injury to the integrity of our judicial system.

---

14. "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation. ABA Standards, Definitions.

15. "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result. "Intent is the conscious objective or purpose to accomplish a particular result." ABA *Standards*, Definitions.

## D. AGGRAVATING AND MITIGATING FACTORS

### 1. MATTERS IN AGGRAVATION, ABA *STANDARD* 9.2

The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction.

**Dishonest Motive—9.22(b)**

■ Respondent acted with a dishonest motive and calculating manner. Had Respondent's actions been caused or affected by an illness or a mental disorder, we might find otherwise. Instead, the evidence shows Respondent planned to deceive the Supreme Court and that she took substantial steps to carry her scheme to its conclusion before disclosing her subterfuge.

**Substantial Experience in the Practice of Law—9.22(i)**

Respondent has practiced law for over twenty years in Colorado. During this time, she has worked as a deputy district attorney, an assistant attorney general, and in private practice. She is experienced in trial and appellate practice. While Respondent testified that she practices with integrity, her conduct here belies this statement.

### 2. MATTERS IN MITIGATION, ABA *STANDARD* 9.3

■ The Hearing Board considered evidence of the following mitigating circumstances in deciding the appropriate sanction.

**Absence of a Prior Disciplinary Record—9.32(a)**

The record shows Respondent has not been subject to the disciplinary process in the past.

**Timely Good Faith Effort to Make Restitution or Rectify Consequences of Misconduct—9.32(d)**

The Hearing Board finds Respondent's effort to rectify the consequences of her misconduct a *substantial* mitigating factor. While Respondent's conduct in deceiving the Supreme Court was egregious, her admission of misconduct to the Court was laudable. In spite of Respondent's deliberate misconduct, she ultimately acted with integrity in disclosing her scheme.

**Full and Free Disclosure to Disciplinary Board and Cooperative Attitude Toward Proceedings—9.32(e)**

Although Respondent's misrepresentations to the Supreme Court were calculated to deceive, her conduct in these proceedings has been forthright and cooperative in every respect.

**Character and Reputation—9.32(g)**

As evidenced by her three witnesses, Respondent's reputation and character are first-rate. There is no dispute about her commitment to the community she serves. She does much of her work pro bono or at a reduced fee and is viewed by her clients as a good, honest, and hard working lawyer.

**Remorse—9.32(*l*)**

Respondent is truly remorseful for her conduct and her demeanor in Court strongly suggests she understands the wrongfulness of her misconduct.

### *Analysis Under Case Law and ABA Standards*

In *In re Cardwell,* 50 P.3d 897 (Colo.2002), the Supreme Court determined that ABA Standards 5.11 and 6.11, which both presume disbarment, were the appropriate standards to use when a lawyer knowingly made a false statement to the court in violation of Colo. RPC 3.3. The Supreme Court also found that Cardwell acted dishonestly in violation of Colo. RPC 8.4(c). "While assisting his client to plead guilty in a driving under the influence (DUI) case, Cardwell failed to disclose to the prosecutor and to the court that his client had previously been convicted of driving while ability impaired (DWAI)." *In re Cardwell,* 50 P.3d 897, 898 (Colo.2002).

In commenting on Cardwell's misrepresentations, the Supreme Court noted that even though his misrepresentations to the court were influenced by his zeal to protect his client's interests and *in the heat of the mo-*

*ment,* these circumstances did not excuse Caldwell's conduct. Noting that disbarment would normally be appropriate under these circumstances, the Supreme Court suspended Cardwell rather than disbarring him after considering the mitigating and aggravating factors. The People argue that the Hearing Board should follow the Court's decision in Cardwell and suspend Respondent. We agree.

Respondent argues that the Hearing Board should be guided by the Supreme Court's decision in *People v. Small,* 962 P.2d 258 (Colo.1998) rather than *Cardwell.* There, the Supreme Court found a public censure appropriate. Small had been charged with a violation of Colo. RPC 3.3(a)(1) after he testified falsely in a civil action. In the disciplinary proceedings, both parties stipulated Small caused damage to the legal system by misrepresenting under oath in a civil case that he had insurance at the time he was involved in an auto accident. In deciding that a public censure was appropriate, the Supreme Court found that Small's misstatement did not go to a dispositive or material fact.

The Hearing Board finds that *Small* is inapposite. In short, Respondent's case is substantially more egregious. Unlike Small, Respondent planned to deceive the Supreme Court for nearly two weeks (June 19 through June 28) on a matter that was relevant and dispositive to the Court's decision on whether Respondent's brief should be accepted or dismissed.

While we find Respondent's deception to be more egregious than that of *Small,* we also find that substantial weight should be given to Respondent's timely effort to rectify the consequences of her misconduct. Had it not been for Respondent's remedial efforts, disbarment would have been the presumed sanction. *See In the Matter of Fischer,* 89 P.3d 817 (Colo.2004) and *People v. Nulan,* 820 P.2d 1117 (Colo.1991).

## VI. *CONCLUSION*

 One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them; Respondent's conduct posed such a danger. The clear and convincing facts reveal Respondent violated Colo. RPC 8.4(c), 3.3 and 1.3 when she failed to diligently complete CPA's brief and lied to the Court in an effort to buy more time to complete it. Absent extraordinary factors in mitigation, the ABA *Standards* and Colorado Supreme Court case law applying the ABA *Standards* both support disbarment or a lengthy suspension. However, we are convinced that the mitigation in this case warrants less than a lengthy suspension as was imposed in *Cardwell.* Our decision on the appropriate sanction is based substantially upon Respondent's admirable action in self-reporting her misconduct. This factor alone distinguishes her actions from the decision in *Cardwell.*

## VII. *ORDER*

The Hearing Board therefore **ORDERS:**

1. **ALISON MAYNARD,** Attorney Registration No. 16561 is hereby **SUSPENDED** from the practice of law for a period of **ONE YEAR AND ONE DAY, ALL BUT SIXTY (60) DAYS STAYED,** upon the successful completion of a two-year period of probation with conditions. Respondent shall not engage in any further violation of the Colorado Rules of Professional Conduct. As a further condition of probation, Respondent shall attend and successfully complete **Ethics School** sponsored by the People. The suspension shall commence thirty-one (31) days from the date of this order.

2. **ALISON MAYNARD SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.